# The Lycoming Mutual Insurance Co. *versus* Sailer.

1. A policy referring to an application as part of it, is inadmissible without the application.

2. Where a policy was admitted without the application, the error was cured by the opposite party giving the application in evidence.

3. Hay and grain insured were stated in the application as in the " hay-house in the meadow."   There were two buildings in the meadow in which hay was kept, one usually called a " hay-house" and the other a " barn." Evidence was admissible to show which was intended.

4. The maxim *Ambiguitas verborum latens verificatione suppletur ; nam quod ex facto oritur ambiguum verificatione facti tollitur*, applied.

5. An ambiguity being raised by parol, may be explained by parol.

6. Evidence erroneously admitted for the purpose for which it was offered, being found competent for another purpose, the error was cured.

7. Whenever evidence dehors a writing is resorted to to fix identity and locality, it is a question for the jury.

8. The facts that one building at the time of the insurance contained property such as that insured, and that the other did not and could not contain such property, was evidence on the question of which building was intended.

9. The rule of precision and certainty of evidence required to reform a writing, does not apply to evidence to explain a latent ambiguity.

10. A latent ambiguity is to be determined by the weight of the evidence.

11. In a question of reforming a writing, the judge sits as a chancellor and if in his opinion the evidence would justify a decree, he is bound to withdraw it from the jury.

12. An agent although only to' receive and transmit applications is an agent to receive and transmit notice, which building, where there are two, was intended.

November 18th 1870.  Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Butler county*: No. 137, to October and November Term 1870.

This was an action of covenant on a policy of insurance brought February 7th 1868, by Joseph Sailer against The Lycoming Mutual Insurance Company.  The claim of the plaintiff was for indemnity for loss by fire of the articles insured in a policy issued to him by the defendants, and dated October 7th 1867.  The principal question was, whether the goods were in the place in which they had been insured.

The case was tried, March 15th 1870, before McGuffin, P. J.

On the trial the plaintiff offered the policy in evidence.  The defendant objected unless it were accompanied with the application referred to in it.  The court admitted the offer and sealed a bill of exceptions.

The policy was numbered 97,084, and was for insuring $1930 " on a stock of grain and hay on his farm in Oakland township, Butler county, Pa., in the hay-house, in his meadow, and in stacks

| | |
|---|---|
| about it . . . . . . . . . | $ 400 |
| Farming implements, wagons, harness and mowing-machine . . . . . . . . . | 1000 |
| Horses, cattle, sheep and hogs . . . . . | 530 |
| | 1930 |

Reference being had to the application of the said Joseph Sailer for a more particular description, and forming part of this policy."

Also, " preliminary proof of loss," containing the statement that on the 2d of November 1867, the property described as in the policy and claimed to be insured by the policy, consisted of grain, hay, farming utensils, a cow and horses, valued specifically; the whole valuation amounting to $1261.  He then gave evidence of fire, by which a barn, house, and stable were destroyed, and that property insured and being in and about them was consumed; he gave evidence also of the amount of loss.

The plaintiff testified that the place where he kept the hay was about 120 rods from the burned buildings; he had no insurance on the hay-house in the meadow. .

The plaintiff here rested.

The defendants then gave in evidence the application for insurance referred. to in the policy.  It was made in a printed form, and beside a general statement similar to that in the policy, was the following :—

" Stock of grain and hay on his farm in Oakland township, Butler county, Pennsylvania, in the hay-house, in his meadow, and in stack about it, value $600, and insured for $400.  On farming utensils, wagon, harness, mowing-machine, &c., in and

about same, value $1500, and insured for $1000, and horses and cattle, sheep and hogs, 36 sheep, 3 horses, 4 cattle and 20 hogs, value $850, and insured for $530. These things are all about the hay-house, and not in the barn connected with his tavern-dwelling or store-house and barn connected therewith and this day insured, except the horses sometimes in the stable connected with his tavern-stand and dwelling-house."

Defendants here rested.

The plaintiff in rebuttal then offered to prove by his own testimony " that the words hay-house in his meadow were not used by the plaintiff nor authorized to be used by him, but that they were inserted by said agent through accident or mistake. To be followed by proof that at the time of making the application the insured personal property was in the barn on the farm of plaintiff and that said agent was so informed. This to prevent fraud and correct the mistake."

The offer was objected to by the defendants, admitted, and a bill of exceptions sealed. The plaintiff testified that he told Mr. Robb, the agent of the company, when he went to make the insurance, that he wished his loose property and farming utensils on his "Martin" farm insured, and mentioned the articles, grain, hay, farming utensils, &c., somewhat in detail, they were put down by the agent "in a lump;" the articles were in a barn on the farm he named and were burned; he told the agent he kept the horses wherever he used them; sometimes left in the stable on the "Flick" farm; that he kept his cattle wherever he had pasture for them; that they and the hogs went for shelter to the barn; that all the articles were kept in and about the barn except when in use; that the agent said that it was no difference where the property was so long as it was on the farm; he stated to the agent where the barn was, for what it was used and what he had in it; told him he had no stacks about barn but straw stacks, and no other buildings on the Martin farm but a hay-house, and that he did not want any insurance on that; it was a log building at one end of his farm not fit to keep farming utensils or grain in, no place to put sheep or pigs, it was 120 rods from the barn, which was also in a meadow about the middle of the place which contained about 143 acres; he described to the agent the barn that was burned as the one the articles were in. He testified also that he did not read the application nor was it read to him before he signed it; he did not tell the agent that he wanted any insurance in or about the hay-house; the hay and grain were in the barn at the time of making the insurance.

For the defendants, Mr. Robb testified that he had no power to make insurances; his testimony in relation to the circumstances at the time of making the insurance differed materially from the plaintiff's; he testified also that after the fire the plaintiff admitted

[Lycoming Mutual Ins. Co. v. Sailer.]

he had no claim on the company, and that he made no allegation of mistake in the application.

Two other witnesses connected with insuring for the defendants testified in corroboration of Mr. Robb.

The plaintiff in eight points asserted that under the evidence it was a question for the jury whether the place where the property was burned, was that where it had been insured.

The defendants in twenty-one points asserted that the policy and application for insurance formed the contract of the parties ; that its construction was for the court; that the articles burned not being in the place mentioned in the policy and application, there could be no recovery ; that the parol evidence relative to what was the contract was so open to doubt, &c., that it could not be submitted to the jury ; that the location could not be changed by parol evidence; that the evidence to show mistake was not sufficient; that Mr. Robb the agent could not bind the defendants, &c. The leading question was, whether the "hay-house" mentioned in the application referred to the barn, &c., was where the property was destroyed.

In his general charge, and in answer to the points, the judge submitted this question to the jury.

The jury found for the plaintiff $1282.53.

The defendants took out a writ of error. They assigned two errors to the admission of the evidence and eighteen to the instructions of the court.

These assignments, with the points and answers referred to, will be found in the opinion of the Supreme Court, pronounced by Mr. Justice Sharswood.

*E. M. Bredin* and *L. Z. Mitchell*, for plaintiffs in error.—The policy referred to the application as part of it, and could not be read without it: Egan *v.* Albany Mutual Co., 5 Denio 326. As a member of a mutual insurance company, the defendant was charged with knowledge of the application : The Susquehanna Co. *v.* Perrine, 7 W. & S. 348. The defendants did not know of the mistake ; it was therefore not mutual, and the policy could not be reformed: Cooper *v.* The Farmers' Mutual Co., 14 Wright 299. Robb was the plaintiff's agent in filing the application : Holmes *v.* The Charlestown Mutual Co., 10 Metc. 211 ; Jennings *v.* The Chenango Mutual Co., 2 Denio 75. The contract is to be taken as the parties made it: Gottsman *v.* The Penna. Ins. Co., 6 P. F. Smith 213. The statement of the location was a warranty, and parol evidence cannot vary it: Fowler *v.* Ætna Co., 6 Cowen 673. The evidence was not clear of doubt, &c., and should have been excluded: Stine *v.* Sherk, 1 W. & S. 195 ; Edmonds's Appeal, 9 P. F. Smith 220.

[Lycoming Mutual Ins. Co. *v.* Sailer.]

*J. M. Thompson* and *C. McCandless*, for defendant in error.—
Written instruments may be varied by parol: Chalfant *v.* Williams, 11 Casey 215.

The opinion of the court was delivered, January 5th 1871, by

SHARSWOOD, J.—This case was conducted with marked ability
by the counsel of the plaintiffs in error, both in the court below
and in this court. Twenty errors have been assigned, many of
them indeed depending upon the same principle ; but, after care-
ful consideration, I have found it difficult to classify them, and
deem it best, though at the expense of some repetition, to discuss
each one separately.

1. The 1st error assigned is that the court permitted the plain-
tiff to read in evidence the policy of insurance declared upon,
without reading with it his application referred to and pleaded by
the defendants. This application is declared by the policy to be
a part of it, and it would therefore seem to have been incumbent
on the plaintiff either to have produced it or to have accounted
for its non-production. But this error, if it was one, did the
defendants no harm. They afterwards produced and gave in
evidence the application, and they have had on the trial all the
advantage of that document.

2. In overruling the defendants' objections to the testimony
offered that the words " hay-house in his meadow," in the appli-
cation, were not used by him, and were inserted by the person
who filled the application through accident or mistake. Eight
objections were specified to this offer. It is not necessary to
consider each of them separately. The evidence of accident or
mistake as offered may have been objectionable under the plead-
ings; but the evidence given under this offer was clearly admis-
sible. It went to show that there was a latent ambiguity, both
in the policy and application, and to explain it. It appeared
that there were two hay-houses in the meadow—one more properly
a barn, the other a small log building, which might be called a
barrack, used for keeping hay in. Now it was clearly competent
for the plaintiff to explain this latent ambiguity by parol evi-
dence of which building was meant by him, and stated to the
agent who received the application on behalf of the defendants.
The rule of law is well stated by Lord Bacon : *Ambiguitas ver-
borum latens verificatione suppletur ; nam quod ex facto oritur
ambiguam, verificatione facti tollitur :* Bacon's Max. Reg. 23.
"*Patens,*" he remarks, "is that which appears to be ambiguous
upon the deed or instrument; *latens* is that which seemeth cer-
tain and without ambiguity, for anything that appeareth upon
the deed or instrument, but there is some collateral matter out
of the deed that breedeth the ambiguity:" Law Tracts 99. The
ambiguity being raised by parol, may be explained by parol.

The mistake was in the offer, and though the evidence offered was inadmissible for the purpose for which it was offered, yet if, when given, it is found to be entirely competent in the cause for another purpose, the error, if there was one in the admission, was cured. No legal wrong was done to the defendants by the admission of the evidence.

We come now to the errors assigned to the charge and answers of the court.

1. This is in substance that the court erred in submitting to the jury the question whether the building described in the policy declared upon had been burned with the insured property in and around it. When we have settled that there was evidence of a latent ambiguity in the policy—that there were two hay-houses in plaintiff's meadow—and that the plaintiff meant in his application that one of the buildings which was burned and so stated to the agent of the company authorized to receive the application,—it was certainly the province of the jury to decide the matter. In addition to this, there were other circumstances strongly corroborative of the position that the house which was destroyed by fire, and not the other, was meant. None of the property insured was in or about the small log house—it could not have contained the articles described. Whenever evidence dehors a written instrument is resorted to, as it often must be to fix the identity and locality of the subject, it becomes necessarily a question for the jury. Thus it was held in Richardson v. Stewart, 2 S. & R. 84, that when land is described by reference to matters not contained in the written contract, and resting on parol evidence, the jury are to decide what land was the subject of the contract. "It was uncertain," said Chief Justice Tilghman, "on the face of the writing which tract was intended to be sold, so that the court could not decide it without calling in the aid of the jury." So in Bertsch v. Lehigh Coal and Navigation Co., 4 Rawle 130, where Mr. Justice Kennedy said: "As often as written agreements fail to describe by metes and bounds the lands contracted for, and to give a precise location to them, the omission is always supplied and the application of the agreements made to the lands by the introduction of parol evidence, which has ever been considered competent; otherwise, in most cases, the agreements could never be carried into effect." And in Nourse v. Lloyd, 1 Barr 229, it was decided that where there is no patent ambiguity in the description of a boundary, it is the province of the jury to determine how far it is answered by the monuments on the ground, and to judge between discrepancies in the calls. It is clear, then, that under the evidence it was properly submitted to the jury to determine which hay-house was intended by the application and policy.

2. In submitting to the jury the question whether the property

17 P. F. SMITH—8

[Lycoming Mutual Ins. Co. *v.* Sailer.]

insured was destroyed by fire while in the building described in the application and policy. It follows, if the reasoning in regard to the 1st error assigned to the charge be correct, that there was no error in this submission. If the jury found that the barn was the hay-house intended, then it was properly left to them to say that the property insured was destroyed by fire while in the building described in the application and policy; for the barn is thus ascertained to be that building.

3. In authorizing the jury to find that the articles insured were destroyed by fire while in or near by, close to or around or adjoining or within a reasonable distance of the hay-house. It is probable that this assignment is founded upon the idea that there was no sufficient evidence of any mistake in the instrument, and that it was for the court to construe it. But if, as we have seen, the evidence was not of a mistake but to explain a latent ambiguity, then the question here referred to was also properly submitted to the jury. According to the application and policy, the stack of grain and hay was in the hay-house and in stacks about it. The other articles, farming implements, wagons, harness, mowing-machine, horses, cattle, sheep and hogs, were all about the hay-house.

4. In refusing to instruct the jury that there was no evidence that the plaintiff's grain and hay were in the hay-house or in stack about it. But there was evidence, which was for the jury, that the barn was the hay-house intended, and that the plaintiff's stack of hay and grain was in it and in stacks about it. It would have been error to have withheld it from the jury.

5. In refusing to instruct the jury that there was no evidence that the plaintiff's farming implements, or his wagons, or his mowing-machine, or his cattle, or his sheep, or his hogs, were in or about the hay-house. This assignment evidently rests upon the same grounds as the preceding one. There was evidence that all these articles were in and about the barn which was consumed by fire.

6. In refusing to instruct the jury that there was no evidence that the plaintiff's horses were in or about the hay-house or in the stable connected with his tavern stand or dwelling-house when lost. The application stated specially that the horses insured were sometimes in the stable connected with his tavern stand and dwelling-house. The evidence was that the plaintiff had two horses burned in the barn.

7. In leaving it to the jury to decide whether the policy declared upon covered by its terms the loss of the plaintiff's property thereby insured at the place where the fire happened. This is but a repetition in another form of the 2d error assigned to the charge, and needs no further remark.

8. In leaving it to the jury to ascertain where on the farm of

the plaintiff the building described as the place of the property insured was located or situate. This also is but a repetition in another form of the error assigned in the 1st specification of error in the charge. It is true that it is based upon the affirmation of the plaintiff's 1st point that the identity of the building described in the application and policy is a question of fact to be found by the jury. As we have already seen, this answer was entirely correct.

9. In instructing the jury that the descriptive phrase "hay-house in his meadow," in the application was but one of the means by which they might find what building was thus named. The evidence given in the cause was to be applied to the description in the instrument to ascertain what building was then meant. This we understand to have been the meaning of the plaintiff's 2d point and there was no error therefore in affirming it.

10. In submitting to the jury with the description in the policy and application and as evidence of a mistake in that description, the situation, character, use, occupancy and surroundings of the buildings. No doubt in the answer to the plaintiff's 3d point on which this assignment is based, the original error of regarding the evidence offered and given as evidence of a mistake in the instrument again made its appearance. But considering this evidence in its true light as explanatory of a latent ambiguity, there was certainly no error in this answer. "The inquiry for the jury," says the learned judge, " will be what house was insured—where did it stand upon the premises of the plaintiff when it was insured —what was its character at that time and what were its sur-soundings—how occupied if at all." These were legitimate sub-jects for consideration as bearing upon the question to be decided by the jury. Surely if it appeared that the one building was suitable and capable and actually did contain in or about it the property insured at the time of the application, which the other did not and could not, these were very important and significant facts.

11. In refusing to withdraw from the jury the parol evidence heard to show that the contract evidenced by the application and policy was not the contract intended by the parties. The reason assigned for the defendants' 10th point, the answer to which is the ground of this specification, is "that the parol evidence was not clear, precise and indubitable, but is contradictory and open to doubt, and therefore the question should not be submitted to the jury." The learned judge affirmed the rule of evidence as stated in the point, but declined to withdraw it from the jury. That rule is correctly stated if it had been an attempt to reform a written instrument by evidence of mistake. But there is no such rule as to evidence to explain a latent ambiguity. The latent ambiguity having been shown to exist, it became necessary to give parol evi-

dence to explain it. The contract would otherwise be void on account of uncertainty as in the case of a patent ambiguity, which cannot be so explained. Hence the jury are to decide according to the weight of evidence as in other cases. The defendants certainly had no right to complain of the manner in which the learned judge stated the rule of evidence, and he was clearly right in not withdrawing it from the jury.

12. In leaving it to the jury to decide whether the evidence received to show that the words " hay-house in his meadow," were inserted in the application through accident or mistake, and that barn and stable were intended, was, if found true, sufficient—by the law of the reformation of writings—upon parol evidence of mistake to enable the plaintiff to recover. The learned judge in the passages from his charge and answers specified under this assignment again fell into the error of treating the case as one of a reformation of contract on the ground of a mistake, and there are no doubt, in this view, some incongruities and inconsistencies in his instructions to the jury. Indeed, he affirmed the 17th point of the defendants, that there was no such mistake shown as would warrant any reformation or change of the contract, and yet the question was afterwards submitted to the jury. Now, had it been a case of reformation, there would in this have been manifest error. In such a case the judge occupies the place of a chancellor, and the jury are called in to assist his conscience in the determination of controverted facts. If in his opinion the evidence is not sufficient to justify a decree for the reformation of the writing, he is bound to withdraw it from the jury. But it is not so upon parol evidence to explain a latent ambiguity. There, if there is any evidence, the question of its sufficiency is for the jury. The judge may give his opinion upon its sufficiency, but that opinion is not binding upon them. What injury, then, was done to the defendants by the charge and answers to the points in this respect, and of what have they any right to complain? The question which was the hay-house intended, was left to the jury, under directions and instructions as to the nature and degree of evidence required much more stringent and severe than the case warranted, and with an expressed opinion of the judge upon the evidence in his view adverse to the plaintiff. Surely, if either party had cause to complain of this, it was not the defendants.

13. In submitting to the jury whether a mistake was proved in the written evidence of the contract—the expression of something which neither party intended to express, or the omission of something which both parties intended to insert. The learned judge indeed affirmed the 1st and 5th points of the defendants upon which this assignment is based. For that reason, as well as from what has been previously said, it is plain that the defendants were in no way injured by these answers, even though it may be true

that in this view of it the case ought not to have been submitted to the jury.

14. In submitting to the jury whether there was legal evidence of mistake in the written evidence of the contract. The learned judge affirmed the defendants' 4th point, that without evidence that the plaintiff's grain and hay was in the house described or in stack about it when lost by fire, the defendants were not liable to make good such loss or any part of it. He added, however, this qualification, "unless there is legal evidence of a mistake." Here the error of considering the case as one of mistake occurs, and if such had been the question this answer no doubt was wrong. But how were the defendants harmed by it? All the evidence—termed improperly evidence of mistake—was submitted to the jury to enable them to decide the true question in the cause—which of the two hay-houses was the building intended by the description in the contract. Upon that question all that evidence was competent and relevant, and the question, as we have seen, was entirely for them.

15. In refusing to instruct the jury that there was no evidence that the defendants were informed of any mistake in the plaintiff's application. This may have been necessary if the question had been of a reformation of the writing, but as we have seen that was not the question, but of the meaning of an ambiguous description in which the intention of both parties was to be gathered from all the circumstances. The defendants intended to insure the property in some hay-house on the plaintiff's farm, and it evidently mattered not whether they knew that there were two hay-houses or only one. Without the evidence the contract would have been void, and had the property been burned in the old log building, they might and most properly would, have taken defence that the barn was the hay-house intended. The agent, though it may be only an agent to receive and transmit applications, was an agent to receive and transmit notice of the fact brought to his knowledge that the barn was the hay-house intended.

16. In giving the jury to understand that all that took place or passed between the plaintiff and Mr. Robb at the filing of the application took place or passed between the plaintiff and the defendants. The answer to the plaintiff's 4th point does not warrant the inference here attempted to be drawn from it. That point might have been directly affirmed that in searching for the building described, the jury are to look at the attending circumstances at the time of making the application. The learned judge did substantially affirm it, and in that committed no error. If the plaintiff did communicate to the agent of the defendants that the property insured was then in and about his barn, and that such barn was the building meant, it would affect the defendants with notice if such notice was necessary.

[Lycoming Mutual Ins. Co. *v.* Sailer.]

17. In submitting to the jury this question—whether the word "hay-house in his meadow," was a mutual mistake or a mistake of the defendants as well as of the plaintiff. The answer of the learned judge to the plaintiff's 8th point was certainly not such as the defendants have any right to find fault with. He directed them that in reforming the instrument so as to change its language the evidence must establish that it is not the mistake of one party as to what he may have intended, but it must be a mutual mistake of the parties to the contract, in this case the plaintiff and the company. Had the question been one of reformation, the instruction would have been correct, and no doubt it would have been error to submit it to the jury. But as applied to the actual case of evidence to explain a latent ambiguity, it was inapplicable, and if injurious to either party, it was so to the plaintiff. It is true, that the jury are to inquire what both parties intended by the ambiguous words, but that is to be gathered from all the evidence—the situation, use, occupancy and surroundings of the property, as well as the declarations of either party at the time.

18. In submitting to the jury this question—whether the words "hay-house in his meadow" were inserted in fraud of the plaintiff; in the answer to the plaintiff's 8th point, the learned judge said, "the inquiry will be as I have said, was there a mistake or fraud committed?" Now it may be that there was no evidence of either mistake or fraud, such as should have been submitted to the jury to ground thereon a reformation of the writing. But, as we have already seen, it was not necessary to the plaintiff's recovery that there should have been either. By this instruction the jury could not have been misled. The true question was submitted to them—which was the hay-house intended—and that was entirely independent of either mistake or fraud. As far as can be discovered, it was the only real question, and the plaintiff's case was embarrassed and endangered by the mode and qualifications with which that question was submittted, not the defendants'.

Thus have we patiently, painfully and laboriously waded through the twenty errors assigned upon this record. We have found errors, but not such as ought to avail the plaintiffs in error. The cause was tried and decided below upon its merits. A court of errors ought not to reverse for merely formal mistakes where substantial justice has been done according to law.

Judgment affirmed.