# Rook v. Greenewald, Appellant.

*Deeds — Boundary—Courses and distances — Monuments on ground—Weight of the evidence.*

Where in an action of ejectment the question for solution is whether the true line between the plaintiff and defendant is as written in a deed, or as indicated by an old fence referred to by the witnesses, the fact in dispute is to be determined by the jury in accordance with the weight of the evidence. The law does not require that the jury shall be satisfied upon a question of this character beyond a reasonable doubt, nor does the law require that the evidence shall be clear, precise and indubitable as in the case of the reformation of a deed.

If in such a case the parties actually adopted an old fence mentioned by the witnesses as the line, and instructed their surveyor so to locate it, and the surveyor did run the line and fixed a monument by driving a stake between two trees at the east end of the line which was a projection of the line indicated by the old fence, then this was the true line between the parties, and the courses and distances in the deed must be controlled by it in so far as they are found to be in conflict therewith.

The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence when the marks or monuments are gone.

Where an ambiguity arises out of collateral matter not in the deed, the explanation of the ambiguity is a question to be determined by the jury from the weight of the evidence.

*Statute of limitations—Adverse possession—Judgment.*

The mere recovery of a judgment in ejectment will not of itself stop the running of the statute of limitation. There must be an actual change of possession in virtue of such judgment.

Argued Feb. 10, 1903. Appeal, No. 12, Feb. T. 1903, by defendant, from judgment of C. P. Lycoming Co., March T., 1903, No. 9, on verdict for plaintiff in case of Joseph S. Rock v. Henry Greenewald. Before BEAVER, ORLADY, SMITH, W. D. PORTER and MORRISON, JJ. Reversed.

Ejectment of land in Loyalsock township. Before MITCHELL, P. J.

The opinion of the Superior Court states the case.

The court charged in part as follows:

[The defendant seeks by this evidence to overcome the

VOL. XXII—41

courses and distances described in the deeds between the parties. In order to be successful in this effort, the court feels it is its duty to instruct you that the evidence offered by the defendant must be clear and satisfactory. It must be evidence of an extremely strong character, because when a man gives or takes a deed it generally means precisely what it says.] [1]

[Now, gentlemen of the jury, that is the question for you to decide : Was there a monument upon the ground, which was adopted by the parties as the dividing line at the time this division was made between them? Has that monument been recognized by these parties as the dividing line, or as a monument marking the line of partition, up to 1895 or thereabouts? Are those facts proven by evidence which, in your judgment, is clear and satisfactory? Strong enough in reality to remove all reasonable doubt from your minds? If they are so established, you would be warranted in finding a verdict in favor of the defendant. If they are not so established, then it would be your duty, under the evidence in this case, to find a verdict in favor of the plaintiff.] [2]

Defendant presented this point:

1. If the jury find from all the evidence that B. H. Detweiler and Henry Greenewald, when they divided the land owned by them in common, agreed that the old rail fence running up the hollow should be the division line between their respective purparts now owned by the plaintiff and defendant, that Chas. Stewart who was employed to survey and run the line between the respective lots to be conveyed to each other in severalty by Detweiler and Greenewald, did run said line upon the ground and along the old rail fence up the hollow, according to its several courses and distances, and fixed a post as the east corner or termination of said mutual line, and that B. H. Detweiler. and his successors in title, including the plaintiff and defendant have down to the time of bringing the suit, recognized the old fence running up the hollow, in selling, cultivating and occupying their respective lots of land, as the common line, then the verdict of the jury must be for the defendant. *Answer:* Gentleman of the jury, we charge you substantially as that point is drawn, with this modification: that if this fence and this post were actually upon the ground, and were adopted by these parties as monuments marking their common division

line at that time, and have since been recognized as such by this plaintiff, your verdict should be for the defendant. [3]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*W. C. Gilmore* and *H. T. Ames*, with them *T. H. Hammond*, for appellant.—In the event of a discrepancy between the courses and distances called for in the deed and the monuments on the ground, the monuments will control, even though no monuments are called for in the deed: Blasdell v. Bissell, 6 Pa. 258 ; Ogden et al. v. Porterfield, 34 Pa. 191 ; Willis v. Swartz, 28 Pa. 413 ; Dawson v. Mills, 32 Pa. 302 ; Bookholder v. Markley, 98 Pa. 37 ; Craft v. Yeaney, 66 Pa. 210 ; Morse v. Rollins, 121 Pa. 537 ; Pringle v. Rogers, 193 Pa. 94 ; Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108.

Appellant's counsel contend that the court below erred in not answering defendant's first point as submitted, without qualification, and this constitutes our third assignment of error. Appellant had a right to have this point affirmed or denied : Swank v. Phillips, 113 Pa. 482.

*Charles J. Reilly* and *C. LaRue Munson*, with them *Addison Candor*, for appellee.—The essence of a consentable line is, that the parties must be acquainted with the extent of their rights : Perkins v. Gay, 3 S. & R. 327 ; Adamson v. Potts, 4 Pa. 234 ; Hagey v. Detwiler, 35 Pa. 409 ; Kellum v. Smith, 65 Pa. 86 ; 2 Herman on Estoppel, sec. 1134.

And the existence and maintenance of a fence does not affect the question : Potts. v. Everhart, 26 Pa. 493 ; Stuven v. Kalchreuter, 8 W. N. C. 44.

Where it is recited in a deed that the direction in which the line shall proceed shall be by a certain course and distance, and, also, to a certain landmark or monument, it has been decided that of the two ways of proposed extension of the line the one pointing to the landmark shall be taken to the exclusion of the other.

It has never been decided, however, that courses and distances in a deed shall give way to other courses and distances not in some manner designated in the deed.

Therefore, within the purview of the decisions, "a monument" may be said to be a landmark, either natural or artificial, called for in the deed.

An ambiguity is latent if it results from viewing the instrument in the light of the collateral facts, or what may be called the necessary intrinsic evidence : Herring v. Boston Iron Co., 67 Mass. 134.

OPINION BY MORRISON, J., May 4, 1903 :

This was an action of ejectment for a small piece of land in Loyalsock township, Lycoming county, Pennsylvania. The verdict was in favor of the plaintiff and judgment being entered thereon the defendant, appellant, took this appeal. The history of the case as stated by the learned counsel for the appellant is as follows : Henry Greenewald and B. H. Detwiler, M. D., were the sole owners as tenants in common of a lot of land situated in Loyalsock township, Lycoming county, Pennsylvania, containing eighty-one acres and sixty perches more or less.

Prior to April 9, 1878, Detwiler and Greenewald agreed to an amicable partition or division of said land so held by them and fixed upon a rail fence then on the ground running eastwardly through said land as the division line between them. Greenewald to take the land north and Detwiler the land south of the fence, as their respective purparts. In accordance with their agreement Greenewald and Detwiler employed Charles Stewart, a surveyor, to go upon the ground and run the division line as fixed by the fence. Stewart ran the line on the ground along the old rail fence, as agreed upon as the division line between Greenewald and Detwiler, beginning at the corner of the land of Mrs. Andrew Hepburn, thence by the following courses and distances, to wit : N. $80\frac{1}{2}°$ E. 15 perches to a post along lands of said party of the first part; thence N. $73\frac{1}{2}°$ E. 4 perches to a post; thence N. $46\frac{1}{2}°$ E. 4 perches to a post; thence N. 67° E. 12 perches to a post ; thence N. 70° E. 6 perches to a post ; thence N. 76° E. 24 perches to a post; thence N. 83° E. 2 perches to a post; thence N. 75° E. 85 perches to land of Striebly or Rudino.

Charles Stewart, the surveyor, in making draft of the survey as run by him on the ground and from which the respective deeds of Greenewald and Detwiler were drawn, copied the

fifth course so that it read, " N. 70° E. 6 perches " instead of
" S. 70° E. 6 perches " as run by Stewart on the ground along
the line of the old rail fence.   On April 9, 1878, Henry Greene-
wald and B. H. Detwiler conveyed to each other their respec-
tive purparts and Greenewald went into possession of the land
on the north side of the said fence, and has continued in posses-
sion to the present time, cultivating the land and making valu-
able improvements thereon.   On March 14, 1879, Detwiler con-
veyed the lands south of the fence to William G. Mather by deed,
which describes the land as commencing at the corner of land
of Mrs. Andrew Hepburn; thence north $80\frac{1}{2}°$ E. 15 perches to
a post along land of Henry Greenewald ; thence north the sev-
eral courses and distances as described in the deed from Henry
Greenewald to B. H. Detwiler and Mather, took possession of
the land thus purchased and treated the old rail fence as the
division line between him and Greenewald.   William Newton
occupied and worked the land as a tenant for Mather until its
sale to Rook, appellee, November 3, 1883.   Greenewald and
Mather, by mutual agreement stipulated which part of the fence
each would build, Mather building with boards that part of the
fence that began on the west line next to Hepburn corner and
ran east therefrom, in the exact location of the old rail fence,
the rails of the old fence being divided between Greenewald
and Mather.   Mather showed William Newton, his tenant, and
his sons the old rail fence on the ground, and the post driven
between the hickories at the northeast corner, as his line.   On
November 3, 1883, W. G. Mather conveyed the land south of
the fence to Joseph S. Rook, the appellee, by deed which is
an exact copy of the deed from Detwiler to Mather.   Prior to
the sale by Mather to Rook, Mather notified William Newton,
his tenant, that he was going to sell the land ; that Joseph S.
Rook, the appellee, would come to examine the land, and directed
Newton to show Rook the lines, which Newton did, showing
Rook the division line between Greenewald and Mather, which
was the same line that was run on the ground by Charles Stew-
art, the surveyor, marked by the old rail fence.   Newton told
Rook that the post and stones between the hickories at the
northeast corner was the corner of the land between Greene-
wald and Mather.   Before Rook, the appellee, purchased the
land he called on Henry Greenewald, the appellant, who showed

Rook the original line on the ground made at the time of the division and survey. After Rook took possession of the land he worked up to and recognized the fence built in the place and stead of the old rail fence agreed upon by Greenewald and Detwiler, and run by Stewart, the surveyor, as the line between their land until 1895, when Rook brought his first action of ejectment. Rook removed a part of the board fence and built in the place and stead thereof a stone wall in exactly the same position as the old rail fence. Rook cut off the limbs of the cherry trees growing on Greenewald's land, which extended over the line fence, and threw them over the fence on Greenewald's land. The appellant contended at the trial of the case that the line agreed upon by Detwiler and Greenewald, and run on the ground by Charles Stewart, the surveyor, " S. 70° E. 6 perches to a post " must govern the description in the deed, which reads, " thence N. 70° E. 6 perches to a post," and the strip of land embraced in the plaintiff's description, which is the result of running the line according to the deed, and not according to the actual survey, is the land of the defendant and not of the plaintiff.

We have thus stated the appellant's contention in substantially the language of his learned counsel, and, if the question in dispute as to whether the line as written in the deed or the alleged line as marked on the ground is to be determined by the weight of evidence under the ordinary rule in regard to disputed facts, then we think the appellant fairly sustained his contention and was entitled to have the matter submitted to the jury under adequate instructions so that they could find which was the true line of division between the land of the appellant and appellee, that is, whether it was to be controlled by the old fence above referred to, or whether it was as indicated in the deed.

The learned judge below tried the case on the theory that in order to establish the line on the ground different from what it was written in the deed, the evidence must be clear, precise and indubitable, and must in fact be strong enough to remove all reasonable doubt from the minds of the jury. Referring to the facts in evidence in regard to the line fixed by the old fence, the learned judge said: " If they are so established you would be warranted in finding a verdict in favor of the defend-

ant. If they are not so established then it would be your duty, under the evidence in this case, to find a verdict in favor of the plaintiff."

Again the court said : "The defendant seeks by this evidence to overcome the courses and distances described in the deed between the parties. In order to be successful in this effort, the court feels it is his duty to instruct you that the evidence offered by the defendant must be clear and satisfactory. It must be evidence of an extremely strong character, because when a man gives or takes a deed it generally means precisely what it says." The defendant's first point was as follows: "If the jury find from all the evidence that B. H. Detwiler and Henry Greenewald, when they divided the land owned by them in common, agreed that the old rail fence running up the hollow should be the division line between their respective purparts now owned by the plaintiff and defendant, that Charles Stewart was employed to survey and run the line between the respective lots to be conveyed to each other in severalty by Detwiler and Greenewald, did run said line upon the ground and along the old rail fence up the hollow, according to its several courses and distances, and fixed a post as the east corner or termination of said mutual line, and that B. H. Detwiler and his successors in title, including the plaintiff and defendant have down to the time of bringing the suit, recognized the old fence running up the hollow, in selling, cultivating and occupying their respective lots of land, as the common line, then the verdict of the jury must be for the defendant." The learned judge answered this point as follows: "Gentlemen of the jury, we charge you substantially as that point is drawn, with this modification: that if this fence and the posts were actually upon the ground, and were adopted by these parties as monuments, marking their common division line at that time, and have since been recognized as such by this plaintiff, your verdict should be for the defendant."

We find ourselves compelled to hold that this answer was erroneous. We think the defendant was entitled to have this point affirmed without qualification. We also hold that the instructions to the jury that "it must be evidence of an extremely strong character because when a man gives or takes a deed it generally means precisely what it says" was too strong against

the defendant. Again, we think this language in the general charge is erroneous: " Are those facts proven by evidence, which in your judgment, is clear and satisfactory, strong enough in reality to remove all reasonable doubt from your minds ? If they are so established you would be warranted in finding a verdict in favor of the defendant. If they are not so established then it would be your duty under the evidence in this case to find a verdict in favor of the plaintiff." The question for solution was whether the true line between the plaintiff and defendant was as written in the deed or as indicated by the old fence referred to by the witnesses and by the court in its charge, and undoubtedly the true rule is that this fact was to be determined by the jury in accordance with the weight of the evidence. The law does not require that the jury shall be satisfied upon a question of this character beyond a reasonable doubt, nor does the law require that the evidence shall be clear, precise and indubitable as in the case of the reformation of a deed. The learned court and the counsel for the appellee appear to have tried the case on the theory that the courses and distances written in the deed were much stronger evidence than the monuments on the ground fixed and adopted by the parties at the time of the location of the division line between their respective lands. But this is not the rule. If the parties actually adopted the old fence mentioned by the witnesses as the line and instructed the surveyor to so locate it and he did run the line along this fence and fixed a monument by driving a stake between the two small hickories at the east end of the line which was a projection of the line indicated by the old fence, then this was the true line between these parties and the courses and distances in the deed must be controlled by it in so far as they are found to be in conflict therewith. We think the evidence was quite strong in support of the appellant's contention that the old fence was the true line. It does not seem probable that the jury would have found as they did in favor of the line written in the deed if the question had been submitted to them under the evidence with correct instructions as to the law. The appellant contends that the whole difficulty arose by the surveyor reporting to the scrivener who drew the deed that the fifth course was N. 70° E. 6 perches to a post, which carried the line north several rods from the old line fence, while in

truth and fact the surveyor ran south 70° E. which brought him to the old fence, and from thence he ran the several courses and distances along the line of the fence. One circumstance that appears in the evidence very strongly corroborates the appellant's theory upon this question. It will be found that the courses and distances as written in the deed correspond precisely with the courses and distances of the old fence, the only difference being that the line is as far north of the old fence line as the course thence N. 70 E. 6 perches carried it. In Morse v. Rollins, 121 Pa. 537, on page 543, Mr. Justice STERRETT speaking for the court said : " The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence, when the marks or monuments are gone." In this case the marks or monuments upon the ground and the deed did not agree, and the learned court below was asked in a point submitted to instruct the jury that " this is an equitable ejectment, and takes the place of a bill in equity to reform the deed from the plaintiff to Amelia Allen, through whom the defendant claims title. There being no such evidence in this case as would move a chancellor to reform the deed from the plaintiff to Amelia Allen, your verdict should be for the defendant." This point was refused and the refusal was assigned for error. There was a verdict and judgment sustaining the boundaries found upon the ground and the Supreme Court affirmed this judgment. In Craft v. Yeaney, 66 Pa. 210, on page 214, Chief Justice THOMPSON said : " The subject-matter of the first assignment of error on this record has long been settled in this commonwealth, and is not now an open question, namely : that calls in a deed are always liable to be controlled by lines on the ground. I regard this as a rule well-nigh, if not entirely, without exception." In this case an attempt was made to have the court hold that the deed must control. The learned court below said : " While it is true the deed cannot be changed, or construed, or affected by parol, it is competent to prove outside of the deed that the calls in the deed are not on the ground, or that a line or boundary called for in the deed is in a different place than that contracted for by the parties, or that what is called the eastern line of warrant No. 4019 is not at the place sold and bought to. This was excepted to, but the Supreme

Court approved it.    It is to be observed that the clear, precise, indubitable rule was not applied in this case, but it was tried upon the weight of the evidence.    In Blasdell v. Bissell, 6 Pa. 258, Chief Justice GIBSON said on page 259 : " Plaintiff had partly executed a parol sale by having the land surveyed and possession of it delivered according to monuments on the ground ; but in-drawing a deed for it, the scrivener inserted the courses and distances without reference to the monuments.    These are found to be discrepant.    And which shall govern ?    Undoubtedly the monuments."    This was a case where the line agreed upon was a fence, but the deed described a different line and the court below was of the opinion that the deed fixed the line for the reason that the agreement must be considered as merged in the deed and the lines therein mentioned must govern, but the Supreme Court said this was error and reversed the judgment.    In Burkholder v. Markley, 98 Pa. 37, Mr. Justice TRUNKEY speaking for the court, on page 40, says : " The lines run and marked on the ground are the true survey, and when they can be found will control the calls for a natural or other fixed boundary ; and also constitute the boundaries in the grant where they differ from those produced by the courses and distances stated in the patent.    This well settled rule in cases of lands granted by the commonwealth, applies to grants by individuals."    On the trial of this case evidence was excluded because it came within the rule that parol evidence can only be admitted, to contradict, explain or reform a deed on the ground of fraud or mistake.    But the Supreme Court held this to be error, and that the evidence tending to fix or corroborate other evidence fixing the line upon the ground should have been admitted.    The theory of this case is that the true line should be fixed by the weight of the evidence.    This case holds that a line on the ground, fixed by the parties as one sold and bought to, controls calls or distances stated in the deed, wherever there is fraud or mistake.    In Pringle v. Rogers, 193 Pa. on page 97, Mr. Justice DEAN said : " There is no ambiguity in the description on the face of the instrument ; the petition, return and deed are as precise and clear as the language of the conveyancer could make them.    There was, however, a latent ambiguity, according to Bacon's Maxims, as approvingly quoted by SHARSWOOD, J., in Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108 :

' Latens is that which seemeth certain and without ambiguity, for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity. ' Here the parol evidence showed a mistake by somebody, when the unambiguous description was applied to the marks on the ground ; in two instances the lines were shorter than in the deed, when the monuments called for were reached ; either the lines were erroneously measured or erroneously written, or the monuments called for were not at the end of the measured distance ; this was a mistake collateral to the deed. Either the monument must be disregarded or the lines shortened. What should be judicial decision in such dilemma? The court below conceded that as a general rule the monuments on the ground must control the distance, but said in substance that if the jury could not locate all the lands shown by the record to have been conveyed, then they were at liberty to disregard the monuments and locate the land by the distances. This, we think was a flat reversal of a well established rule ; it put the measurement as the controlling fact, instead of a fixed, conspicuous, enduring monument on the ground : " see also Carroll v. Miner & Another, 1 Pa. Superior Ct. 439, and see specially page 455, same case.

If the contention of the appellant in regard to the old fence being the true line is correct then the deed raises a latent ambiguity. This ambiguity arises out of collateral matter not in the deed, to wit : the fence line on the ground. In our opinion the appellant was entitled to have this question determined by the jury on the weight of the evidence : Insurance Co. v. Sailer, 67 Pa. 108. On page 115, SHARSWOOD, Justice, says : " The reason assigned for the defendant's tenth point, the answer to which is the ground of this specification, is that the parol evidence was not clear, precise and indubitable, but is contradictory and open to doubt, and therefore the question should not be submitted to the jury. The learned judge affirmed the rule of evidence as stated in the point, but declined to withdraw it from the jury. That rule is correctly stated if it had been an attempt to reform a written instrument by evidence of mistake. But there is no such rule as to evidence to explain a latent ambiguity. The latent ambiguity having been shown to exist, it became necessary to give parol evidence to explain

it. The contract would otherwise be void on account of un-
certainty as in the case of a patent ambiguity, which cannot be
so explained. Hence the jury are to decide according to the
weight of evidence as in other cases." If this question had
been submitted to the jury under proper instructions it can
hardly be presumed that the jury would have found that the
land north of the fence belonged to the plaintiff.

There is another question in this case which has not yet been
alluded to. At the trial the evidence strongly tended to show
that the appellant and his predecessors in title had been in open,
notorious and hostile possession of the land in dispute for about
twenty-four years. This fact if found by the jury upon suffi-
cient evidence would have been a complete answer to the plain-
tiff's case. But it is conceded that the learned counsel for the
appellant stated to the court that the defendant could not de-
fend on that ground because of a prior action of ejectment and
judgment therein for the land in dispute in favor of the plain-
tiff, appellee. The learned counsel was led into this admission
by the case of Brolaskey v. McClain, 61 Pa. 146, on page 166.
Mr. Justice WILLIAMS speaking for the court said: " If Wes-
ter and his heirs had the continued and adverse possession of
the lot during all this time, it would be sufficient to give them
a title under the statute. But, as we have already seen, Rich-
ard Peters brought an action of ejectment against Henry Wes-
ter in 1818, and recovered a verdict and judgment therein in
1825. This recovery stopped the running of the statute, and
even if the Westers held adverse possession of the lot there-
after until the house was torn down in 1838, they acquired no
title under the statute of limitations." We think the general
rule upon this subject is that the mere recovery of a judgment
will not of itself stop the running of the statute of limitations ;
that there must be an actual change of possession by virtue of
such judgment. The judgment in ejectment does not change
the relation between a plaintiff and defendant so far as the pos-
session is concerned, without surrender, an entry, or the issu-
ing of habere facias, the judgment does not toll the statute of
limitations and interrupt adverse possession : Duffy v. Duffy,
20 Pa. Superior Ct. p. 25. In view of the position taken by the
counsel for the appellant we cannot reverse the court below on
this ground, but inasmuch as the judgment must be reversed

on other grounds, it affords us some satisfaction to believe that very likely the appellant has a complete defense under the statute of limitations.

So far as in harmony with this opinion the assignments of error are sustained. Judgment reversed and venire facias de novo awarded.