Messrs. Duncan, Walker and Hall, *pro quer.*

Messrs. Clymer, C. Smith and D. Smith, *pro def.*

---

Lessee of ISAAC BEAR and SAMUEL BEAR *against* ANDREW RUSSELL.

Where there are more than one warrant, or order in the hands of a deputy surveyor to be executed on a river or creek, it is his duty to adhere to his instructions as to the proportion of front on such river or creek and the extent back therefrom.

EJECTMENT for 220 acres of land in Washington township.

The plaintiff's title was as follows: An application was entered in the secretary's office, on 3d April 1769, No. 164, in the name of John M'Grath, for 300 acres of land, on the south side of the west branch of Susquehannah, about 25 miles from fort Augusta, including a bottom called Oughcough-Pockany. A survey was made thereon, by Charles Lukens, of 330 acres, and allowance, on the 26th June 1769, which contained a front of 902 perches on the river.

*Caveats* were filed against the return of this survey, and on the 26th March 1770, the board of property on the claims of John Stephens, John Montgomery and John Morgan, against William Plunket, (who obtained a transfer of M'Grath's location on the 21st March preceding,) decided, that the narrow bottom on the river should be divided by Charles Lukens and William Scull, into as many tracts as it would allow of, taking in as much of the back lands as were fit to be taken up, or as the parties should be willing to take into their surveys ; and that it

---

* A witness is competent, though another swears he heard him confess, he was to gain by the event of the suit. 2 Barnard. B. R. 178.

should stand over until the matter should be decided between Stephens and Plunket, as to Plunket's location. A patent however issued to Plunket, on the 17th August 1774, and on the next day he mortgaged the lands to the trustees of the general loan office, to secure the payment of 200*l.* and interest. On the 22 April 1793, the lands were sold by Flavel Rowan, esquire, sheriff, (the mortgage money being unpaid,) to the lessors of the plaintiff for 811*l.*

The defendant held as tenant, under the heirs of John Montgomery, who entered an application on the 3d April 1769, No. 916, for 300 acres on the west branch of Susquehannah, upon the south side of said branch, opposite the lower end of the proprietaries survey, upon a small run on the river, opposite to the upper end of Muncey hill.

It appeared in evidence, that the defendant's location described the lands in question, and that if Plunket's survey had been bounded by the run mentioned therein, it would have excluded the controverted grounds. There was a long narrow bottom of land along the river. The grounds back were arable and fit for cultivation, though being pine barrens they were of much inferior, quality to those in front of the river. Application was made in June 1769 to Levy Stephens, who surveyed under Charles Lukens, to make the survey for Montgomery. He promised to do it and return the lands above the mouth of the run for him, and a large walnut was afterwards fixed as a corner of his survey, but the promise was not complied with.

The heirs of Montgomery publicly claimed the lands, sold by the sheriff as the property of Plunket.

It also appeared, that on the 3d April 1769, two other applications had been made, one No. 1429, in the name of John Feree for 300 acres on the south side of the west branch of Susquehannah, opposite to the Muncey town; the other No. 391, in the name of Joseph Feree, for 200 acres on the south side of the river, adjoining and above the lands claimed by John Feree.

Yeates, J. declined taking any part in the decision, having been appointed one of the executors of Stephen Chambers, esq., who claimed one third part of the lands in controversy.

Smith, J. I feel no difficulty whatever sitting alone in this cause. It is so plain, that it cannot be perplexed. The instructions formerly given to the deputy surveyors, and their usage will readily determine the dispute between the parties.

The deputy surveyors under the late proprietaries "uniformly received instructions to lay out all lands that adjoin rivers

or large creeks, at least three times the length from the river or creek as they are laid out in breadth on said river or creek, so that each purchaser may have a proportionable front on the water ; provided the ground will in any wise admit of it, and to lay out all lands contiguous and as regular as possible."

If there were no other warrants or applications than those they were executing, they assumed greater liberties, and if in such instances, they gave a larger front on a river or creek, than their instructions admitted, and their surveys were accepted, no injury was done, and no one could reasonably complain. The proprietaries might in such a case dispense with their usual rule, and grant their lands as they pleased. But when there were other rights, though subsequent in point of time, which also called for execution, the due proportion of front on the water and extent back, ought, in justice, to be adhered to. To deviate from the established rule under those circumstances, would do manifest injustice to third persons. I will not say, that in practice, the surveyor is restricted to one or even two perches beyond his directions, where the situation of the grounds calls for a latitude in judgment. But I will assert, that to go 902 perches by the margin of a navigable river, and where the lands back are of a quality proper for cultivation, to fill up an order for 300 acres, is altogether unprecedented, and unwarranted by any law or usage, where it would operate against the rights of others. By such improper practices, in garbling the whole of the lands of the first quality, the settlement of the country is retarded, besides doing essential injustice to individuals.

The defendant may shelter himself under either of the applications of the *Ferees*, as the plaintiff has not entitled himself thereto. He may rely on his possession.

The location under which the plaintiff claims is vague, but if surveyed in a reasonable manner, according to the duty of the deputy surveyor and common usage, it would cover 300 acres and allowance ; but not when laid in this unfair, unconscionable manner. I am therefore clearly of opinion, that the plaintiff is not entitled to recover in this action.

The plaintiff's counsel hereupon agreed that a verdict should be given for the defendant, but desired that the following points might be reserved :

1st. Whether the location and survey in the name of Joseph Feree, adjoining John M'Grath and William Montgomery, should have any operation in favor of the plaintiff, under the testimony given. It is admitted that Feree's survey does not include the lands in question, but is bounded thereby.

2d. Whether the plaintiff's survey being made, returned and accepted, and a patient issued thereon, and the application calling for the lands surveyed which is earlier in number than that of the defendant, does not vest a title in the plaintiff?

This motion being acceded to, a verdict was given for the defendant.

Messrs. Duncan and D. Smith, *pro quer*.

Messrs. C. Smith and Hall, *pro def*.