## Miles Land Co., Appellant, *v.* Pennsylvania Coal Co.

*Ejectment—Boundaries—Judgment—Writ of habere facias possessionem.*

1. Where a verdict in ejectment is for less than the entire premises sued for, it must sufficiently show what portion thereof was awarded to plaintiff, and must not be so uncertain that a writ of habere facias possessionem cannot be issued upon it.

*Land law—Surveys—Boundaries—Extension of courses to stream—Presumption.*

2. In the early part of the nineteenth century, where land was vacant, it was the policy and practice of surveyors to carry the boundaries to streams. An intent may therefore be presumed to bound surveys on waters by the stream.

3. Where one of the lines upon an early survey extending towards a river, stopped short of the river by six rods, without calling for the river, but in the succeeding courses followed its meanderings, by courses and distances, it will be presumed that such line in fact extended to the river, and this is especially the case where it appears the line corresponded with a boundary line of an adjoining survey, which called for the river.

Argued February 18, 1923. Appeal, No. 169, Jan. T., 1923, by plaintiff, from judgment of C. P. Lackawanna Co., May T., 1911, No. 142, for defendant, on case tried by the court without a jury, in case of Miles Land Co. v. Pennsylvania Coal Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Ejectment for land in Moosic and Old Forge Boroughs. Before TERRY, P. J., specially presiding.

Judgment for defendant on case tried without jury. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*J. H. Price,* with him *S. B.* and *C. B. Price,* and *Ellis L. Orvis,* for appellant.—It is sufficient if adjoinders and boundaries are given: Hawn v. Norris, 4 Bin. 77; P. & N. Y. C. R. R. v. Roberts, 8 W. N. C. 6; Fisher v. Larick, 7 S. & R. 99; Thomas v. Culp, 4 S. & R. 271; Harris v. Ry. Co., 11 Pa. Superior Ct. 6; Clement v. Youngman, 40 Pa. 341; Seitz v. R. R., 272 Pa. 84.

If it is possible for a surveyor to locate the land by the description found by the verdict or judgment of a court, judgment should be given for plaintiff: Seitz v. R. R., 272 Pa. 84.

*John P. Kelly,* of *O'Brien & Kelly,* and *Henry A. Knapp,* of *Knapp, O'Malley, Hill & Harris,* with them *H. J. Connolly,* for appellee.—A verdict, like an award, ought to have in it something final and conclusive; the wording of it must not be such as of itself to create dis-

putes: Martin v. Martin, 17 S. & R. 431; Harris v. Ry., 11 Pa. Superior Ct. 6; Seitz v. R. R., 272 Pa. 84.

If there was vacant land, it was a strip of such narrow dimensions that it would be entirely contrary to the long established usage of the land office to grant such strip of land having so long a frontage upon a navigable stream, as proportioned to its area, for the trifling compensation fixed by the land office for granting of public lands: Barton v. Bouvier, 1 Phila. 523; Bear v. Russell, 2 Yeates 130.

OPINION BY MR. JUSTICE SCHAFFER, March 19, 1923:

In this action of ejectment, plaintiff sought to recover a narrow piece of land, under and along the Lackawanna River, which it claimed under patents from the Commonwealth to one Chambers, its predecessor in title, surveyed in 1870; defendant's answer is that the land in question belongs to it, under an earlier patent in its chain of title of a tract containing 222 acres, known in this proceeding as the William Hocker Smith tract, which extended to the thread of the river, and, therefore, there was no vacant land along the stream at the time the patents under which plaintiff claims were issued, and they were void.

A great deal of testimony was taken before the learned judge, who, under agreement of the parties, heard and decided the case without a jury, but it is not before us, for the reason that it was stipulated on the record by counsel for appellant (plaintiff), if they were not required to print it, they would "confine the assignments of error to the legal conclusions stated by the trial judge, and that no question would be raised as to the correctness of the formal findings of fact."

The court determined plaintiff had established a superior title to the land in dispute, lying north of low watermark on the river, but that judgment could not be entered for it, because the land could not be described with the certainty necessary to enable a writ of habere facias possessionem to be executed, and by reason of this

entered judgment for defendant. Plaintiff attacks this conclusion on the ground, mainly, that if adjoinders and boundaries are given, that is a sufficient description.

Under the stipulation filed by counsel, that they would confine themselves before us to an endeavor to overturn the legal conclusions of the trial judge, and would not challenge the correctness of his findings of fact, the space for criticism of the court's judgment is a very limited one, as his findings of fact in large measure control the decision of the case.

The whole dispute grows out of the proper location of the point of termination of the eastern line of the William Hooker Smith 222-acre tract, in the original patent, under which defendant claims. If this line, which is projected from a township line that is certain, was intended to go to the Lackawanna River, then everything else drops out of the case, because, in that event, there was no vacant patentable land north of the river when the patents, under which plaintiff claims, were issued.

Defendant's patent was granted under a survey made in 1802; in it the line in dispute runs south, 3 degrees west, 140 perches to a corner; this distance carries it about 6 rods north of the river. The stream is not given as a call for this course in the description, and is not shown on the survey returned to the land office, although a subsequent course crosses the river. If this line terminates 6 rods north of the river, there is a narrow strip between it and defendant's southern boundary, the description of which, as the court below found, cannot be accurately determined, because the description filed by plaintiff "is in some instances a departure from the official survey involved, and simply stating 'low watermark of the Lackawanna River' as a boundary is insufficient......Where low watermark of the river was, at the time of the survey, requires definite proof, owing to a fill later made in and along the stream in the construction of a railroad at the point in question, and also to

show the variations of the compass in applying the courses and distances of the official survey......It is impossible, upon the evidence adduced, to describe the narrow strip of land belonging to the plaintiff with the certainty necessary to enable a writ of habere facias possessionem to be executed. The plaintiff has been given ample opportunity to furnish such proof, if it can be made, but has wholly failed to do so." In summing up the case, the court said: "There is left for consideration the question whether the plaintiff can have judgment for the narrow strip of land between the W. H. Smith survey line and low watermark of the river. This would be decided affirmatively if such land could be described with the certainty necessary to enable a writ of habere facias to be executed. It is, however, impossible to do this upon the evidence adduced. The description in plaintiff's statement is of the whole of the land claimed, and no specification of anything less has been made, though called to the attention of counsel. While the course of the river in general has not changed around these tracts, the construction of the railroad alluded to, at and near the end of the division line repeatedly mentioned, made an alteration there, by reason of a fill, demanding an independent survey to determine the location of the original Smith tract line and the place of low watermark of the river at and along that point. This now is of no easy ascertainment, and there is also involved the variation of the compass since 1802 as well as since 1870 [the dates of the surveys concerned] making unavailable to us without due correction the courses there given." The court also found: "It is admitted that this official survey of the W. H. Smith [222-acre] tract will not close, and each party has a different method of correcting the error, which, concededly, is along the river on the south. We sustain the method of the defendant, as that of the plaintiff is founded upon an alleged material change in the course of the river, which we cannot find as a fact." The foregoing findings of fact under the stipulation cannot

be challenged and are controlling against plaintiff. "Where a verdict is for less than the entire premises sued for [and it was here], the verdict must sufficiently show what portion thereof was awarded to plaintiff, and must not be so uncertain that a writ of possession cannot be issued upon it" : 19 Corpus Juris 1203 ; Smith v. Brotherline, 62 Pa. 461 ; Seitz v. Penna. R. R. Co., 272 Pa. 84.

A study of the record, however, has convinced us that the plaintiff cannot recover for another reason which we will endeavor to state briefly. The court below held, the 140-perch eastern line of the 222-acre tract did not extend to the Lackawanna River, as there was no call for the river in the description at the termination of that course, and as the river was not shown on the survey. We think this course did extend to the river. The survey was made in 1802. At that time, where land was vacant it was the policy and practice to carry the boundaries to streams. In Barton v. Bouvier, 1 Phila. 523, 525, that great jurist, Judge HARE, said : "The patent purports to pass the title to a long strip of marsh land, extending many perches along the Delaware between high and low watermark, thus cutting off the firm land lying behind it from access to the river for the whole space through which it extends. This is a plain violation of the well-settled policy and practice under which lands have been granted in Pennsylvania." See also Bear v. Russell, 2 Yeates 130. An intent to bound surveys on waters by the streams may be presumed : Wharton v. Garvin, 34 Pa. 340. There can be no good reason given why it was not intended to carry the 140-perch line to the stream ; much less reason can be assigned for running the line to a corner 6 rods from the stream, and then running a notched and crooked boundary line of short courses and distances following its meanderings only 6 rods distant therefrom ; that is the situation we have here unless it be concluded that the line ran to the river. Furthermore, the line, on plaintiff's contention, after paralleling the meanderings of the river, crosses it, without first spe-

cifically carrying the crossing course to the river. In addition to this, the 140-rod line, the eastern boundary of the 222-acre tract, is given as the western boundary of the adjoining tract in the patent of it, and the river is designated, in that patent, as the call for the course at the 140-perch distance, and the connecting course, at the corner of the 140-rod line in that patent, is north 82 degrees west, *along the river,* and the course, from the 140-rod line in this patent is the same, north 82 degrees west, with the words "along the river" omitted. The line of the course 82 degrees west on the two tracts is 40 rods long, 15 rods on the Wright (eastern) tract and 25 rods on the Smith (222-acre) tract. The common corner of the two tracts is the 140-perch point in that line. The plan of the survey of the Wright tract shows the point and the river, not only as it bounds the Wright tract, but as it passes the common corner upon the 222-acre tract, thus, to us, convincingly demonstrating that the 140-rod line dividing the two tracts had its southern point of termination on the river. If the course 82 degrees west was along the river, as we conclude it was, the succeeding ones were, which would account for their notchings, shortness and frequency, indicating, that the surveyor made an accurate survey of the stream, but neglected to note its presence, at this point, in his description or survey as returned.

Furthermore, as found by the court below, the 222-acre tract, and the adjoining tract to the east, of which we have been speaking, were surveyed in 1802 by Thomas Sanbourne, surveyor to the commissioners, under the Act of April 14, 1799, for offering compensation to Pennsylvania claimants, of certain lands in Luzerne County, also claimed under Connecticut grants. These two tracts previous to their division constituted what had been known as lot No. 53. The court below finds, "The antecedent history of that lot, embracing both of said tracts, was shown by documentary evidence, whereby it appeared that it had been earlier occupied by William

Hooker Smith, a Connecticut claimant, under written evidence of right *showing the river as its boundary upon the south.* The eastern part of lot No. 53 became the Thomas Wright tract, and the western part the William Hooker Smith tract." The court also found as a conclusion of law that "The Thomas Wright tract calls for and is bounded on the east and south by the Lackawanna River, and extends to the thread thereof." To us the demonstration that the southern boundary of the patent under which defendant claims was the river is so complete that we could well rest the affirmance of the judgment on that ground; our affirmance likewise follows the trial court's view of the case.

The judgment is affirmed.