## Seitz, Appellant, *v.* Pennsylvania Railroad Co.

*Ejectment — Boundaries — Uncertainty — Evidence — Case for court—Burden of proof.*

1. In an action of ejectment the case should not be submitted to the jury where plaintiff's evidence presents no definite or certain limits to the land in controversy, and it would not be possible for a surveyor to locate the boundary lines, or for the jury to describe the property in a verdict.

2. In such case the burden of proof is on plaintiff to show the property lines.

Argued September 20, 1921. Appeal, No. 19, Oct. T., 1921, by plaintiff, from order of C. P. Armstrong Co., March T., 1917, No. 99, entering judgment for defendant n. o. v., in case of K. T. Seitz v. Pennsylvania Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Ejectment. Before KING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff. Judgment for defendant n. o. v.

*Error assigned,* inter alia, was judgment, quoting it.

*R. L. Ralston,* of *Ralston & Graff,* for appellant.

*Harry C. Golden,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 3, 1922:

Plaintiff sues in ejectment to recover the southern part of lot No. 42 in Freeport, Armstrong County; the

line in dispute is the southern boundary. When the State built the canal through Freeport it condemned and occupied the land necessary for canal purposes, taking part of lot No. 42. The main canal occupied Walnut Alley, the then southern boundary of this lot, and part of the lot. A lock, with masonry sides and wing walls, forming part of the canal, to raise and lower boats, was constructed at the southern end of the lot, and a wasteway, with log and board bottom and sides, was built, extending from the canal above the lock running through the lot and connecting with the basin at the west; the ground between the wasteway and the lock or canal was between 25 and 30 feet wide. The State sold the canal to the Pennsylvania Railroad Company in 1857, and that part of it north of Freeport, extending to Allegheny City, was acquired by the Western Pennsylvania Railroad Company. This latter corporation built a railroad through Freeport over the route of the canal. In 1915 the Pennsylvania Railroad, successors to the West Penn, raised the track through Freeport Borough, and, in so doing, occupied the land claimed to be within its grant,—here in dispute. Plaintiff claims to the line of Walnut Alley where the railroad was originally constructed, at the close of the canal days, and has since been so maintained and used. In the line of title, from the date of condemnation by the State in 1837, the lot has been described as bounded on the south by Walnut Alley or the Pennsylvania canal; in 1843 the disputed line was described "on the south by the Pennsylvania canal," and in the seven title transfers following until 1853 it reads "on the south by the wasteway of the Pennsylvania Canal......, extending back to the northern margin of the said wasteway"; this was followed in 1861 by a similar description. The partition proceedings later fixed the line as that of the Pennsylvania canal; appellant's deed calls for Walnut Alley and the West Penn Railroad on the south. The court below permitted a recovery for a part of the land, but,

on a motion for judgment n. o. v., held there was no evidence of title in plaintiff to any of the land, and entered judgment accordingly.

Appellee's title to the land between the wasteway and the southern side of the lock is quite clear; it took, like all other condemnors, land adjacent necessary for the proper enjoyment of the thing condemned, and not only was the wasteway a part of the canal, but also, for the proper maintenance of it, ground sufficient on either side of it was necessarily included in the condemnation so as to preserve the property condemned (Pennsylvania Canal Co. v. Harris, 101 Pa. 80, 93); the part in controversy is the small strip, about seven feet by sixty-six feet, between the wasteway and the northern line of defendant's wall.

The evidence did not disclose the exact location of the wasteway, but, when the State built the canal, a dwelling house and store extended from the lock, over the 30 feet of land, partly to, if not altogether over, the wasteway; before 1859 the house was moved back from the wasteway to the northern part of the lot on its present location, facing the canal. Without discussing the description in the various deeds, it was incumbent on appellant to show her southern line, which was defendant's northern line, and, assuming the wasteway was the line, there was no evidence of its location or of any encroachment on her lot that would sustain an award of any part of the land. The wasteway was described as a ditch or dyke to carry water from an upper to a lower level; it ran at right angles with lot No. 42, while defendant's wall cut the lot diagonally. Plaintiff places the distance at seven or eight feet on the east side but cannot give any distance in the center or at the west side. The testimony of Seitz is depended on to show encroachment, and we quote it in full: "Q. Do you know where that wall of the Pennsylvania Railroad Co. is at the present time? A. I do. Q. How far is that from the wasteway or from where the wasteway was formally located? A. Well,

I could not say how far, the face of the wall is a good bit outside of the wasteway, that is, where it is now. Q. Is the wall further north on lot 42 than where the wasteway was located? A. Oh, yes. Q. About how much further north is it ? A. I could not tell the exact distance of that. Q. Did the wasteway cut square across lot 42, or was it cut in a diagonal way? A. It was not a diagonal way. Q. How does the Pennsylvania Railroad Co.'s wall now cut across it, squarely or diagonally? A. I think it cuts it diagonally. Q. About how does it cross, that is, the wall, how does it cross that lot,—at right angles? A. No, it crosses it, or cuts more of it below than it does above. Q. About how far was it from the wasteway at the east line of your lot? A. I could not tell the distance there, but it is quite a distance, some seven or eight feet anyhow. Q. Do you mean that the outside of the line, that is, the north face of the wall, is seven or eight feet from the north edge of the wasteway? A. Yes, sir. Q. How is it in front of your property, about the middle of the lot? A. It runs a little closer to my house now, it takes up a little more room. Q. How far is that point, it, the north face of this wall, from the wasteway? A. I could not figure on that exactly."

Fullerton, plaintiff's witness, who has known the properties during and since the canal days, testified: Q. "How far north of the wasteway would the north side of the wall be from the edge of the wasteway? A. Well, the whole thing would be on it, but I could not tell you exactly the amount of feet,"—indicating that the wall was built on the wasteway. It appears the wall was 123 feet from Market Street, the ground between the lock and the wasteway was 25 to 30 feet, and, if allowance was made for the width of the wall of the lock, the width and walls of the wasteway and the ground between, it would tally very closely with the measurements given by the engineer as to land now occupied by the railroad company. Plaintiff, however, does not defi-

nitely fix the distance the wall is north of the wasteway and does not attempt to locate the latter except in the testimony quoted. The evidence is not sufficient to justify a finding that any part of the land in dispute belonged to appellant. It would be impossible for a surveyor to locate the line of the wasteway with that of the wall, or for a jury to describe the property in a verdict. If satisfactory monuments on the ground could not be described, the purposes for which the land was to be used must be considered as bearing on the quantity of land probably taken. It is impossible to determine what part, if any, of the land described in the writ belongs to plaintiff. The burden rests on her to show title to the thing claimed, or to a definite part of it. This she has failed to do. In Rodgers v. Pittsburgh, etc., Ry. Co., 255 Pa. 462, 466, former Chief Justice BROWN said, "It was contended that in any event there was some space between the foot of such slope and plaintiff's southern property line for which plaintiffs were entitled to a verdict. The court declines to accept this view, since, to recover any such fractional part of the ground described in the writ, the jury must have been able to describe the property for which such a verdict could be rendered, and there was no definite and certain limits fixed in or presented by the plaintiffs' testimony or appearing in the case. To have allowed the jury to pass upon that question would have been asking them to guess at the metes, bounds and area." This language applies with equal force to the present case.

The judgment is affirmed.