482 A.2d 1284

**Marlin A. HALLMAN and William D. Hallman**

v.

**Clarence B. TURNS, Sr. and Mary E. Turns, His Wife, Appellants.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed Oct. 12, 1984.

Petition for Allowance of Appeal Denied March 21, 1985.

J. Stephen Feinour, Harrisburg, for appellants.

James L. Goldsmith, Harrisburg, for appellees.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

WICKERSHAM, Judge:

This is an appeal from a judgment in ejectment entered in the Court of Common Pleas of Dauphin County.

We are presented here with a boundary dispute between defendants-appellants Clarence and Mary Turns and plaintiffs-appellees Marlin and William Hallman. The dispute involves a piece of mountainous, unimproved land situated in Fishing Creek Valley, Middle Paxton Township, Dauphin County. The parties do not dispute that appellees' northern boundary line is also appellants' southern boundary line, nor is there a dispute as to the location of the beginning and ending points of this line. It is the course of the boundary between these fixed points which is the subject of this suit.

Originally, the land of both parties was part of a 143 acre tract owned by Sam and Jennie Sweigart. In 1928, the Sweigarts sold approximately nine acres in the northeastern corner of their tract to Clarence and Kathryn Sellers. The southern boundary of that conveyance is the boundary now in dispute. The description of the southern boundary of that parcel (which was ultimately acquired by appellants) is as follows:

> ... to a stake; thence in a north westernly direction along lands of S.C. sweigart [sic] twenty eight and five eighth (28⅝) perch to a locust tree thence in a westernly direction along lands of same thirty six and one half (36½) perch to a stone corner; ....

(R.R. at 202a). In 1951, the Sellers sold this same parcel of land to George and Mary Swavely, who, shortly thereafter, resold the entire parcel to the Turnses, appellants herein.

Meanwhile, the Sweigarts had retained the larger tract south of the boundary in question. Between 1928 and 1961, the Sweigarts sold off four other tracts of varying sizes. Finally, the remaining tract of approximately 55 acres,

located to the south of appellants' land, was sold in 1961 to the Trustees of Troop 8, Keystone Area Council, Boy Scouts of America. By two deeds, one in 1976 and one in 1978, the Boy Scouts conveyed their entire tract to the Hallmans, appellees herein. Hence, appellees' property shares a common boundary with appellants' property.

Subsequent to appellees' taking possession of the southern tract, a disagreement arose with appellants as to the exact location of the common boundary. Appellants argue that the deed of 1928, which created the boundary, mistakenly substituted the word "north westerly" when "south westerly" was intended. Appellants claim that, instead of proceeding *north* westwardly and then westwardly from the easternmost common point, the boundary actually runs first *south* westwardly and then northwestwardly. This would give appellants an additional 3.94 acres in the shape of a diamond.[1] In recent years, appellants have made use of this disputed property, hence the action in ejectment by appellees in 1978.

The case was tried before a jury in March of 1982, which returned a verdict in favor of appellees. Motions for judgment *non obstante veredicto* and a new trial were filed, argued, and ultimately denied by the court *en banc*. Judgment on the jury's verdict was entered on November 24, 1982. Appellants filed this timely appeal.

Appellants raise the following issues before us:

A. Was not the admission into evidence of the Quitclaim Deed from the Troop No. 8 "Trustees" to Hallmans and the exclusion of newly discovered documentary and oral evidence of the dissolution of said Trustees and resultant lack of capacity to execute said Deed prejudicial error?

B. Did not the trial court commit prejudicial error in admitting hearsay evidence in the form of reputation and alleged declarations of a deceased owner as to the location of the disputed boundary line and in subsequently

---

**1.** The crucial piece of physical evidence in the description of the boundary in the 1928 deed, the locust tree, is no longer in existence.

instructing the jury that it could use such evidence to determine the boundary line where the decedent's statements were not made to one with an ownership or other legal interest in the property or at a time when the declarant was on the property for the express purpose of identifying the boundary and where the title is not so remote or the monuments and natural boundaries so uncertain as to be incapable of more direct proof?

C. Did not the trial court commit prejudicial error in refusing to charge the jury that the plaintiff in a possessory action of ejectment has the burden of proving by clear and convincing evidence his right to immediate and exclusive possession of the disputed property under his title?

D. Did not the trial court err in its refusal to enter Judgment N.O.V. in [appellants'] favor where the jury's verdict was contrary to law and not supported by the evidence; or alternatively, to grant [appellants] a new trial where the jury's verdict was against the weight of the evidence?

Brief for Appellants at 3.

After a thorough examination of the record and the briefs of the parties, and having had the benefit of oral argument, we find that the well-reasoned opinion of the Honorable Warren G. Morgan thoroughly discusses and disposes of all but one of the issues raised in this case. We see no need to further discuss issues A, B, and D, and affirm those issues on the basis of Judge Morgan's opinion [See Appendix A]. We will briefly address issue C.

Appellants argue that the court erred in refusing to charge the jury that appellees, as plaintiffs in an ejectment action, had the burden of proving their case by clear and convincing evidence. Because of this alleged error, appellant argues that a new trial is warranted.

The lower court instructed the jury that "the plaintiff has the burden of proving their title." (N.T. at 266). The court then amplified its charge:

[I]f you are to return a verdict for [appellees], it must rest on their proof and that proof must be by a preponderance of the evidence that theirs is the title to this property. They can't rely on the weakness of someone else's title. They have to satisfy you in their own proof.

(N.T. at 266). Later on, the court again stated "If you find that [appellees] have established their claim by a preponderance of evidence, you would then have to go one step further [and decide appellants' claim of adverse possession.]" (N.T. at 269). Appellants' request for an instruction on the "clear and convincing standard" was refused.

We have reviewed the cases cited by both parties and the lower court, and have researched some other cases as well. We acknowledge that there is some confusion in this area of the law, but we have ascertained some general rules. The plaintiff's burden in an action of ejectment is clear: he must establish a right to immediate exclusive possession. *Harbor Marine Co. v. Nolan,* 244 Pa.Super. 102, 366 A.2d 936 (1976). In order to recover in an ejectment action, the plaintiff must show title at the commencement of the action and can recover, if at all, only on the strength of his own title, not because of weakness or deficiency of title in the defendant. *Artz v. Meister,* 278 Pa. 583, 123 A. 501 (1924); *Ratajski v. West Penn Manufacturing & Supply Corp.,* 198 Pa.Super. 588, 182 A.2d 243 (1962); *Carratelli v. Castrodale,* 185 Pa.Super. 426, 137 A.2d 805 (1958). This rule places upon the plaintiff the burden of proving a prima facie title, which proof is sufficient until a better title is shown in the adverse party. "The plaintiff in an ejectment suit, as in other cases, need not go further than to make out a prima facie case." *Golden v. Ross,* 122 Pa.Super. 234, 235, 186 A. 249, 249 (1936). Until and unless the plaintiff has made a prima facie case by showing title sufficient upon which to base a right of recovery, the defendant is not required to offer evidence of his title. If it is admitted or shown that both parties derive their title from a common source, neither party need prove anything regarding the prior title to that

property. *Dunn v. Milanovich*, 302 Pa. 184, 152 A. 757 (1931). Further, if the plaintiff traces title to himself from the common source, he thereby makes out a prima facie case in his favor, calling upon the defendant to prove his alleged title if he wishes to defeat the plaintiff's apparent ownership. *Id.; Babcock Lumber Co. v. Faust*, 156 Pa.Super. 19, 39 A.2d 298 (1944).

It is also clear that to support an action in ejectment, the evidence must be sufficient to identify the land in dispute and establish the plaintiff's right to possession thereof. The burden of identifying and locating the land clearly rests upon the plaintiff. *Seitz v. Pennsylvania Railroad Co.*, 272 Pa. 84, 116 A. 57 (1922); *Beals v. Allison*, 161 Pa.Super. 125, 54 A.2d 84 (1947). In this regard, plaintiff has the burden of presenting definite and certain evidence of the boundary of the property in controversy. *Skillman v. Magill*, 98 Pa.Super. 72 (1929). Where the plaintiff is unable to establish his boundary line by adequate legal proof, his action must fall and he is not entitled to relief.

Clearly, the moving party must prove a specific boundary, but a preponderance of the evidence is sufficient to establish that boundary. *Rook v. Greenewald*, 22 Pa.Super. 641 (1903); 5 P.L.E., Boundaries, § 30.

> [Where in an action of ejectment the] question for solution was whether the true line between the plaintiff and defendant was as written in the deed or as indicated by the old fence referred to by the witnesses and by the court in its charge, and undoubtedly the true rule is that this fact was to be determined by the jury in accordance with the weight of the evidence. The law does not require that the jury shall be satisfied upon a question of this character beyond a reasonable doubt, nor does the law require that the evidence shall be clear, precise and indubitable as in the case of the reformation of a deed.

*Rook v. Greenewald, supra*, 22 Pa.Superior Ct. at 648. In *Rook*, the trial judge had charged that the evidence must be of extremely strong character, clear and satisfactory, and

strong enough to remove all reasonable doubt from the jurors' minds. The Superior Court said that the charge was in error because it utilized the wrong standard. We have not found any more modern discussion of the standard of proof in our appellate cases.[2] We are aware of no public policy reasons, nor have appellants presented us with any, to impose a higher standard of proof in ejectment actions. Because we have been given no reason to doubt that the preponderance of the evidence standard of *Rook v. Greenewald, supra,* is still valid, we hold that this standard still applies to ejectment cases, including the one herein.[3]

Judgment in ejectment is affirmed.

## APPENDIX A

MARLIN A. HALLMAN and WILLIAM D. HALLMAN, Plaintiffs,

v.

CLARENCE B. TURNS, SR., and MARY E. TURNS, his wife, Defendants.

IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA

CIVIL ACTION—LAW

NO. 4665 S. 1978

IN EJECTMENT JURY TRIAL DEMANDED

OPINION

This is an action in ejectment brought by plaintiffs Marlin A. and William D. Hallman against defendants Clarence B.

2. We reviewed the common pleas cases cited by the parties and find that both *Straley v. Wahl,* 97 Da.Co.R. 308, 309 (1975) and *Leeann Corp. v. Jones,* 58 Pa. D & C 2d 703, 706, 22 Cumb. 15 (1972) state that the burden upon plaintiff is one of "a fair preponderance of the evidence." *Deaven v. Zeigler,* 103 Da.Co.R. 466, 467 (1982) appears to stand alone in supporting the "clear and convincing" standard in ejectment cases. We agree with appellees that *Deaven* is not even substantiated by the case cited therein, *Seitz v. Pennsylvania Railroad Co., supra,* which concerned what must be proved rather than the quantum of proof. We agree with *Seitz* that the moving party must prove a specific boundary, but only by a preponderance of the evidence.

3. Even if, *arguendo,* we were to hold that the clear and convincing standard applies, upon a review of the record, we find that appellees' proof would have been sufficient to meet the higher burden.

Turns, Sr. and his wife Mary E. Turns. A jury trial resulted in a verdict for the plaintiffs. We have before us now defendants' motions for a judgment non obstante veredicto and alternatively for a new trial. We find no merit in defendants' arguments and therefore we deny their motions.

Our Supreme Court has recently stated: "A judgment n.o.v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner [citations omitted]." *Atkins v. Urban Redevelopment Authority of Pittsburgh* [489] Pa. [344, 351], 414 A.2d 100, 103 (1980). By this standard we review the facts of the case as developed by the evidence.

The land involved in this action consists primarily of mountainous, unimproved land situated in Fishing Creek Valley, Middle Paxton Township, Dauphin County, Pennsylvania. Originally the land of both parties was owned by Sam and Jennie Sweigart. The Sweigart tract resembled a rectangle roughly twice as long as it was wide, running longitudinally more or less north-south. A finger of the original Sweigart tract extended northwards from the northwestern corner of the property to connect with and give access to Fishing Creek Valley Road, Rte. 443 (Plaintiffs' Exhibit 9). The original Sweigart tract comprised 143 to 144 acres. (N.T. 71).

In 1928 the Sweigarts sold off a portion of their property located in the northeastern corner of their original tract to Clarence E. Sellers and his wife. This conveyance created the southern boundary of the Sellers parcel which is in dispute in this case. The deed given by the Sweigarts to the Sellers describes this contested boundary as running "[from a stake]; thence in a north westernly direction along the lands of S.C. Sweigart [sic] twenty eight and five eighth (28⅝) perch to a locust tree thence in a westernly direction along lands of some thirty six and one half (36½) perch to a

stone corner." (Dauphin County Deed Book A, Vol. 22, p. 339; Plaintiffs' Exhibit No. 4). In 1951 the Sellers sold the whole of this same parcel of land to George W. and Mary T. Swavely (Dauphin County Deed Book Z, Vol. 34, p. 508; Plaintiffs' Exhibit No. 5). Also in 1951 the Swavelys resold this entire parcel to the present defendants, Clarence B. and Mary E. Turns (Dauphin County Deed Book Z, Vol. 34, p. 511; Dauphin County Deed Book D, Vol. 35, p. 463; Plaintiff's Exhibit Nos. 6 and 7). Thus the present defendants own no more than the original grant from the Sweigarts to the Sellers (N.T. 37).

Through the years the Sweigarts conveyed one other parcel of their property which concerns us here, and that was to Theodore Moore in 1939. This 18,000 square foot rectangular parcel was bounded on its eastern, southern and western sides by the Sweigart tract and on its northern boundary by the then Sellers property (Dauphin County Deed Book U, Vol. 24, p. 547; Plaintiffs' Exhibit Nos. 3 and 9; N.T. 37–42).

In 1961 Jennie D. Frantz Sweigart, Mr. Sweigart's widow, sold all the rest of the original Sweigart tract to the Trustees of Troop 8, Keystone Area Council, Boy Scouts of America (Dauphin County Deed Book H, Vol. 47, p. 130; Plaintiffs' Exhibit No. 1). By two deeds, one in 1976 and the second in 1978, the Trustees of Troop 8 conveyed their entire holdings to the present plaintiffs, Marlin A. and William D. Hallman (Dauphin County Deed Book L, Vol. 62, p. 847; Dauphin County Deed Book F, Vol. 65, p. 953; Plaintiffs' Exhibits Nos. 2 and 3). Hence the Hallman's property shares a common boundary with the Turns' property, being the southern boundary of the Turns' property and, except for the 18,000 sq. ft. notch occupied by the Moore conveyance, part of the northern boundary of the Hallman's property.

The beginning and ending points of this boundary are not in dispute. However, the defendants claim that, instead of proceeding northwestwardly and then westwardly from the easternmost common point, the boundary actually runs first

southwestwardly and then northwestwardly. This line would give defendants a diamond-shaped additional 3.94 acres and their property would then completely surround the Moore tract. In recent years defendants have begun to fence this southerly line.

Plaintiff called two witnesses who had been shown the true, northerly, boundary line by Mr. Sweigart himself. Plaintiff also called two professional surveyors who, through field work and a reconciliation of all deeds in the disputed area, found the true line to be the northerly one. We find that this evidence amply supports the jury's verdict and therefore we deny defendants' motion for a judgment n.o.v.

In their alternative motion defendants propose a number of arguments which they contend require the granting of a new trial. First defendants contend that we erred in admitting the testimony of John Mehaffie concerning an incident in the late 1930s when Mr. Sweigart, now deceased, walked along the boundary between his tract and the Sellers property, specifically pointing out the boundary to Mr. Mehaffie [N.T. 124–127]. In Pennsylvania declarations of a deceased owner with respect to boundary are competent evidence, in exception to the hearsay rule, when the declarant owner "was on the land at the time the declaration was made, and engaged at the time in pointing out the boundaries of the land." *Collins v. Clough*, 222 Pa. 472, 484, 71 A. 1077, 1080 (1909). See also, *Dawson v. Coulter*, 262 Pa. 566, 106 A. 187 (1919). This evidence will be admitted when because of lapse of time no more direct evidence is available. *Collins v. Clough*, Supra; *Hostetter v. Commonwealth*, 367 Pa. 603, 80 A.2d 719 (1951). Defendants' objection to Mr. Mehaffie's testimony on this matter are meritless. The crucial piece of physical evidence of the boundary called for in the deed, i.e., the locust tree at the point of the angle constituting the disputed boundary, is admitted by both parties to be no longer there. (N.T. 58, 191). Thus Mr. Mehaffie's testimony was properly admitted. Our discussion here also disposes of defendants' second argument that

we improperly instructed the jury that such reputation and hearsay evidence as Mr. Mehaffie offered may properly be considered. See *Hostetter*, supra, 367 Pa. at 606, 80 A.2d at 720.

Defendants thirdly argue that we erred in admitting into evidence the 1978 quitclaim deed given by the trustees of Troop 8 to the plaintiffs, and in excluding newly discovered evidence of the dissolution of the trustees prior to the execution of the quitclaim deed. We think not. Defendants admitted, in their Answer, plaintiffs' averment that the trustees had executed the 1978 quitclaim deed. "Admissions of this type, i.e., those contained in pleadings, ... are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them." *Tops Apparel Mfg. Co. v. Rothman*, 430 Pa. 583, 587, 244 A.2d 436, 438 (1968). Furthermore, defendants also waived the affirmative defense they allege because they did not raise it in their Answer. Pa.R.C.P. 1032, 42 Pa.C.S.A.; *Birdman v. Medley*, 261 Pa.Super. 23, 395 A.2d [285] (1978). As our Supreme Court has explained, amendments to pleadings should be liberally granted, unless undue prejudice results, and the essence of undue prejudice "must stem from the fact that the new allegations are offered *late* rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed ... [citation omitted]." *Bata v. Central Penn National Bank of Philadelphia*, 448 Pa. 355, 380, 293 A.2d 343, 357 (1972), cert. den. 409 U.S. 1108 [93 S.Ct. 910, 34 L.Ed.2d 689] (1973), reh. den. 410 U.S. 960 [93 S.Ct. 1417, 35 L.Ed.2d 695] (1973). Here defendants offered their amendment on the eve of trial and we find it was properly denied.

Fourthly, defendants argue that we erred in charging the jury that plaintiffs must prevail by a preponderance of the evidence rather than by the more demanding "clear and convincing evidence" standard, as defendants themselves had requested. Defendants are mistaken. See *Rock [Rook] v. Greenewald*, 22 Pa.Super. 641 (1903), *Straley v.*

*Wahl,* 97 Dauph. 308 (1975), *Leeann Corp. v. Jones,* 58 D & C 2d. 703, 22 Cumb. 15, motion overruled 22 Cub. 68 (1972).

Finally, defendants contend that the verdict is against the weight of the evidence so as to require a new trial. We cannot agree. As stated by our Superior Court, "The primary function of a court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision." *Roth v. Halberstadt,* 258 Pa.Super. 401, 406, 392 A.2d 855, 857 (1978). Here plaintiffs have introduced the deed creating the disputed boundary which described the line going from east to west as first proceeding north westward to a locust tree and then westwards. Two witnesses testified that the man who created that boundary, Mr. Sweigart, walked along it with them at different times and pointed it out to them. (N.T. 96, 124–126, 138). These witnesses also testified that Mr. Sweigart erected a single wire fence along the boundary (N.T. 104–05, 125–27). Two surveyors testified that after careful and comprehensive work they placed the boundary on the same northwestwards-westwards line as described by Mr. Sweigart (N.T. 45, 59, 88, 90). Following this line, one surveyor found a tree with a single strand of wire in it, obviously the remnants of Mr. Sweigart's fence. (N.T. 51–52). Furthermore, buildings on the old Moore tract abutted the true property line between that tract and defendants' property. (N.T. 50–51).

For their part defendants testified that they had been shown the more southerly boundary line by Mr. Swavely when defendants purchased the property from him in 1951 (N.T. 210–216). However, Mr. Swavely had only purchased the property himself on the same day he sold most of it to the defendants. (Plaintiffs' Exhibit Nos. 5 and 6). Defendants also introduced the testimony of a surveyor who had determined that the more southerly boundary was the correct one. This surveyor, Mr. Betz, admitted that Mr. Turns had accompanied his crew during their survey and purport-

ed to indicate the locust tree in question along what Mr. Turns believed to be the correct, southerly boundary (N.T. 192–96). Furthermore, Mr. Betz testified that he relied on the specific distances called for in the deeds and on a calculation of the resulting acreage supposedly comprising the plaintiffs' tract in settling on the more southerly boundary line (N.T. 180–81, 199–202), whereas plaintiffs' surveyors relied on monuments rather than acreage. (N.T. 56, 85).

Defendants' survey evidence is less credible than plaintiffs' in several respects. First, defendants attach great importance to the fact that Mr. Betz's southerly survey line approximates the deed distances almost precisely, whereas plaintiffs' northerly line loses about 30 feet on the northwesterly leg. (N.T. 218). This is a hollow argument; obviously this could be corrected by placing the northerly line even further north and giving defendants less resulting acreage. Defendants also argue that the Betz survey results in the correct acreage for plaintiffs' property. However, no actual acreage is mentioned in plaintiffs' deed or claim of title. (N.T. 200). Furthermore, though defendants' deed calls for "nine acres more or less", the southerly Betz line gives them 12 acres whereas the northerly line gives them almost 8 acres (N.T. 54, 56, 84, 202). Hence the southerly line results in a larger proportional error for both properties than the northerly line. Finally, our Supreme Court has said "Evidence of the acreage of land, especially where ... the number of acres is followed by the words 'more or less,' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate." *Dawson v. Coulter*, 262 Pa. 566, 570, 106 A. 187, 188 (1919).

Defendants' contention that the jury's verdict is against the evidence simply does not survive scrutiny of the entire record and we find no cause to grant their motion for a new trial.

Therefore, for the reasons given above, we enter the following

198

## ORDER

AND NOW, October 27, 1982, defendants' post verdict motions are denied.

BY THE COURT:

/s/   Warren G. Morgan

Warren G. Morgan, Judge

Distribution:

James L. Goldsmith, Esquire

J. Stephen Feinour, Esquire