535 A.2d 1078

**Joseph R. BUSIN and Edrie M. Busin, His Wife, Appellants,**

v.

**Francis L. WHITING and Eleanor D. Whiting, His Wife.**

Superior Court of Pennsylvania.

Argued June 17, 1987.

Filed Dec. 7, 1987.

Reargument Denied Jan. 26, 1988.

564

Charles S. Cusick, Jr., New Castle, for appellants.

Allen L. Palmer, New Castle, for appellees.

Before ROWLEY, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

Joseph and Edrie Busin, appellants, commenced this eject-ment action in the Court of Common Pleas of Lawrence County against Francis and Eleanor Whiting. The Busins seek to exclude the Whitings from a disputed section of land and to recover damages. The Busins moved for Sum-mary Judgment. They asserted that they had met their burden of pleading by proving their good title and were therefore entitled to judgment as a matter of law. In its Opinion and Order of October 28, 1986, the trial court denied the Busins' motion and entered summary judgment for the Whitings. We affirm on different grounds.

The Whitings purchased their 175–acre farm from Andy Ratvasky in 1967. In 1981 the Busins acquired what they alleged to be a fee interest in a parcel of land from the trustees of the Erie–Lackawanna Railroad Company. As described in the deed submitted with their complaint, the property is "that portion of the Grantor's right of way known as the New Castle Branch, which commences in the town of Pulaski [and] which extends therefrom in a general-ly southeasterly direction a distance of 7.86 miles [and is] 50 feet or wider." A portion of this strip of land runs through the Whitings' farm, thus generating the dispute. The Bu-sins claim that the Whitings commit continuing trespass by pursuing their farm activities and by otherwise exercising dominion over the land.

An action in ejectment has been held to be the appropriate form of action for the determination of a ques-tion of title to real property. *In Re Yarnall's Estate*, 376 Pa. 582, 103 A.2d 753 (1954). The right to possession is the central element of the action, and establishing fee owner-ship is one valid way of proving this right to possession.

*Soffer v. Beech*, 487 Pa. 255, 409 A.2d 337 (1979). In this case the Busins claim right to possession by virtue of a fee title to the land. If the plaintiff has neither title nor right to possession by other means, he may not oust the defendant by an ejectment action. *Africa v. Trexler*, 232 Pa. 493, 81 A. 707 (1911). As this court has written:

> The plaintiff's burden in an action of ejectment is clear: he must establish a right to immediate exclusive possession.... In order to recover in an ejectment action, the plaintiff must show title at the commencement of the action and can recover, if at all, only on the strength of his own title, not because of weakness or deficiency of title in the defendant.... This rule places upon the plaintiff the burden of proving a prima facie title.

*Hallman v. Turns*, 334 Pa.Super. 184, 189, 482 A.2d 1284, 1287 (1984) (citations omitted).

The Pennsylvania Rules of Civil Procedure require that the initial showing of paper title be demonstrated by means of an abstract of title:

> Rule 1504. Specific Averments. Abstract of title
>
> . . . .
>
> (b) A party shall set forth in his complaint or answer an abstract of the title upon which he relies at least from the common source of the adverse titles of the parties.

Pa.R.C.P. 1054(b). "An abstract of title is simply a compilation in an abridged form of the record of the vendor's title; it is a summary of the most important parts of the deeds and other instruments comprising the evidences of title, arranged in chronological order, and intended to show the original source and incidents of title." 77 Am.Jur.2d *Vendor and Purchaser* § 259. Therefore, if the plaintiff's abstract reveals a defect in his chain of title, he will not have established a prima facie title, without which his claim must fail; the defendant need prove nothing. *Hallman v. Turns*, 334 Pa.Super. at 189, 482 A.2d at 1287.

The Busins submitted with their complaint an abstract of title tracing their chain of title to an 1871 sheriff's sale. The Whitings' answer included their abstract of title, which

demonstrated their title source to be a 1786 grant from the Commonwealth to John Stay, "duly recorded in the office for recording deeds." The Busins countered with a Reply and a Motion for Summary Judgment accompanied by affidavits, chief among which was the deposition testimony of an expert, Robert M. White, taken March 27, 1986. This testimony purported to establish that the railroad grantors acquired fee title from the defunct Erie Canal Company, which had, the expert claimed, received its fee title by a legislative Act of March 7, 1843. The expert admitted that no recorded deed existed but maintained that the Act, which created the Canal Company, served as an implied conveyance that conveyed a fee title. The issue of whether parol evidence can be accepted to prove paper title was not raised, and therefore we will not address it.

The trial court found this questionable conveyance of title to fee interest from the Commonwealth to the Canal Company to be the dispositive issue: "It becomes necessary, therefore, to decide whether an alleged statutory claim of land transferred to a quasi-public body, without an actual deed of title to that body, will constitute a valid link in a chain of title." (Opinion, 10/28/86 at 4). The court held that, because no recorded deed existed evidencing this transfer, no transfer of title had in fact occurred. "[T]he plain language of statutes going back more than two centuries [requires] the recording of deeds for all valid transfers of land in the Commonwealth." (Opinion, 10/28/86 at 5). The trial court cited the original Pennsylvania statute, the Act of March 18, 1775, the pertinent portion of which has been retained Pa.Stat.Ann. tit. 21 § 444 (Purdon 1955). The trial court concluded that the lack of a recorded deed transferring title constituted a fatal defect in the Busin's abstract of title and held that, not having presented prima facie good title, "they cannot maintain this suit in ejectment." (Opinion, 10/28/86 at 8).

We agree both with the trial court's finding that the Busins have not shown good prima facie paper title and with the trial court's conclusion that the Busins' ejectment

action therefore must fail. However, while the trial court bases its conclusion on the fact that there is no *recorded* deed from the Commonwealth to the Erie Canal Company, we base ours on the fact that no deed *exists*, and that in any event the interest passed from the Commonwealth to the Canal Company was not a fee interest. Hence, the Busins never had title to the land and therefore cannot sustain their initial burden in ejectment. The non-recording of a deed can affect the rights of parties. A deed unrecorded for two years is not permitted to be given in evidence. Act of March 26, 1841, P.L. 106; 21 P.S. § 442. An unrecorded deed is void against a subsequent purchaser for value or against a creditor. Act of March 18, 1775, *supra;* 21 P.S. § 444. However, the non-recording in itself cannot prevent the actual passing of the interest in land. The interest passes when the written deed is duly delivered. *Hogue v. Hogue*, 114 Pa.Super. 432, 174 A. 598 (1934); *See* Act of March 21, 1772 1 Sm.L. 389, *as amended*, 33 P.S. § 1 (the Statute of Frauds).

By the Busin's own admission, no deed exists from the Commonwealth to the Canal Company, which is in itself sufficient to render the Busins' claim of title fatally defective. The plaintiff does not establish title in ejectment when possession is not shown and an essential deed in the chain of title is missing. *Faux v. Cooke*, 107 Pa.Super. 88, 163 A. 384 (1933). Nevertheless, if we accept the Busins claim that the Act of March 7, 1843 functions as a deed, our role is to construe this "deed" to discover what interest it does, in fact, convey. In doing so, we find that the Act does not convey a fee interest from the Commonwealth to the Erie Canal Company.

Some historical background is necessary at this point. When the Erie Canal was completed in New York State in 1825 and proved successful, Pennsylvanians were anxious to benefit the Commonwealth in a similar way. The Commonwealth embarked on the canal construction, incurring a heavy debt. By 1843 it was completed as far as Pittsburgh. After some dispute it was decided to extend the canal to

Lake Erie at Erie. The Commonwealth, however, had more difficulty at this stage. After spending $4,000,000 on construction without completing the project, the legislature refused to appropriate the last $200,000 needed. The citizens of Erie, however, wanted the canal built, and a deal was struck. The legislature agreed to cede to a group of private citizens "all the work that had been done" if the group would agree to finish the project. J. Miller, *A 20th Century History of Erie County, Pennsylvania* 234–243 (1908).

The legislature's primary concern was that the group would have sufficient funds to finish the canal and so provided that the Governor would issue letters patent to the "Erie Canal Company" only when one thousand shares of stock, at fifty dollars a share, had been subscribed. Act of March 7, 1843 §§ 1–2. Governor David R. Porter issued the letters patent on June 15, 1843. Records of the Department of State, Corporation Bureau, Pennsylvania State Archives. The canal was completed and in use by 1844, but by 1871 the new railroad had rendered it obsolete. Railroad interests bought the Canal Company stock and ran the canal for a time "in a very unsatisfactory manner" until a major aqueduct collapsed and the canal was abandoned. J. Reed, *History of Erie County*, Pennsylvania 349 (1925). "Its bridges, locks and other equipment were, from time to time, disposed of, and its ditches gradually became refilled, until its very site has been mostly forgotten." *Id.* A sheriff's sale disposed of the Canal Company's interest in "the canal bed, bank, towing paths, slopes, locks, dams, ponds, pools, aqueducts and the land covered by the waters", the Busins' title abstract, N.T. 5/10/84 at 16a.

■ Of course, the Canal Company could not convey a larger interest in all of this than it possessed. We must now examine the Act of March 7, 1843 to determine what interest the Commonwealth gave to the Erie Canal Company. In deed construction, "[i]t is fundamental that the intent of the parties governs and that such intent must be ascertained from the entire instrument." *Mishkin v. Tem-*

*ple Beth El of Lancaster,* 429 Pa. 73, 76, 239 A.2d 800, 803 (1968). Whether an easement or a fee "is intended in a particular instance must be determined by the agreement as a whole." *Graybill v. Hassel,* 167 Pa.Super. 284, 289, 74 A.2d 686, 687 (1950). *See* Annot. 6 A.L.R.3d 973 (1966). Most pertinent to our case:

A rule of construction of deeds provides that in ascertaining the intention of the parties, the language of the deed should be interpreted "in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed."

*Cronan v. Castle Gas Company, Inc.,* 354 Pa.Super. 381, 387, 512 A.2d 1, 3 (1986), *citing Brookbank v. Benedum-Trees Oil Company,* 389 Pa. 151, 131 A.2d 103 (1957).

▮ The legislative purpose, as stated in the act, is "[t]o authorize the Governor to incorporate the Erie Canal Company." As we have seen, the act provides that this would happen when sufficient shares of stock were sold. The next step was:

Section II. That immediately upon the issuing of the letters by the Governor, as provided by the second section of the act the Erie division of the Pennsylvania canal, from the town of Erie to the mouth of Beaver, on the Ohio river, together with the French Creek Feeder, shall be immediately vested in said corporation, authorized to be created by this act and their successors forever, together with all the surplus water power of said canal, all toll houses, implements, and all the estate, real and personal, purchased and owned by the Commonwealth, *for the use of said canal.*

Act of March 7, 1843 (emphasis added). The purpose of giving the Canal Company the portions of the canal that had already been completed was to facilitate the canal's completion and operation. The Busins cite the above passage in their brief, emphasizing the word "forever" as their best evidence that the land was given in fee simple absolute. Appellant's Brief at 18. This language alone cannot support the Busins' position. Even the strongest words of

conveyance to a grantee do not necessarily convey an estate in fee simple if other parts of the agreement show that such was not the parties' intent. *Brookbank, supra.* In *Brookbank* the issue was identical to that in our case, whether a "right of way" constitutes an easement or a fee.

The legislature's intent to give away less than a fee interest is clear from the contents of the Act of 1843 as a whole. Toward the legislature's end of completing and operating the canal for the benefit of the Commonwealth, it retained substantial control over the Erie Canal Company. To grant the company a fee interest would be anomolous to benefiting the Commonwealth. A brief review of the Act will illustrate this point. No banking privileges inured to the Company. Act of March 7, 1843, § 2. The treasurer of the company was required to review the bonds with their sureties every two years. *Id,* § 7. The company's loan ceiling was fixed at $400,000 unless the legislature consented to a change. *Id.,* § 9. A contingent fund was required to be set aside for extraordinary repairs. *Id.* The Commonwealth reserved the right to resume possession of the portion of the line from New Castle to the Ohio River if the Commonwealth's interests so dictated. *Id.,* § 11. The Act allowed the company to collect tolls "provided that the canal shall forever be and remain a public highway." *Id.,* § 12. Truly telling is Section 14, which provides: "At any time hereafter, it shall be lawful for the Commonwealth, upon a passage of a law by the legislature for that purpose, to resume the said line of canal, and the power of privileges and franchises hereby granted by paying to the said company the amount of money expended by them...." *Id.,* § 14.

The Act further provides that no sale or lease of water privileges is vested in the company, *Id.* § 16; that the company shall be bound by the contracts of the Commonwealth, *Id.,* § 17; that all employees of the canal shall be retained by the company, *Id.,* § 18; that the company may enter upon adjoining lands to take stone, gravel, clay, etc. but that they must first compensate the landowners for this, *Id.* § 19. Also significant are the provisions that give

the legislature the power to inspect the company's books "and to report whether the provisions of this charter have been ... abused," and if so, "then the legislature may, by law, declare the said charter void," and if the charter is declared forfeited then:

> the canal aforesaid, with its appurtenances, and all the estate, real and personal, of the said corporation, shall revert to and revert in the commonwealth, upon the payment by the commonwealth to the stockholders, the money expended, with interest.

*Id.*, § 22.

Such a recital of restrictions on use and of reservation by the Commonwealth of the power to re-take the canal make clear that something less than a fee simple interest was given to the company. In short, the act simply authorized the company to run the canal and to keep the profits, provided that the company finance, complete and operate the canal, which was "forever [to] be and remain a public highway." We find, therefore, that the Commonwealth did not give a fee simple interest in the land to the Erie Canal Company.

Because the canal company never had a fee simple interest in the canal land, they never had a fee simple interest to convey. Hence, the Busins never received title to this land. They have not sustained their burden of showing prima facie title. *Hallman v. Turns, supra,* and their ejectment action must fail. We note that the deed from the grantor railroad to the Busins is titled "Quitclaim Deed", describes the interest passed as "the Grantor's right of way" and identifies the land involved as a generally 50 foot wide strip extending for 7.86 miles. The habendum clause language "and their successors forever" does nothing to alter the less-than-fee interest conveyed. *Brookbank, supra.* Because the Busins must have a fee simple in the land and nothing less in order to succeed, and because we have held that they do not possess this, we find it unnecessary to characterize exactly what interest the Commonwealth did give the Canal Company.

■ The Busins did not submit a good abstract of title and thus did not present a prima facie case. Because their ejectment action failed as a matter of law, the trial court was correct in denying their motion for summary judgment. Nor did the trial court err in entering summary judgment for the Whitings, the non-moving party. On a motion for a judgment on the pleadings, "the judgment may be entered for or against any party without regard to whether he was the moving party" (citations omitted). *Boron v. Smith*, 380 Pa. 98, 102, 110 A.2d 169, 171 (1955). This principle has been applied to summary judgment motions in *Port Authority of Allegheny v. Flaherty*, 6 Pa.Commw. 135, 293 A.2d 152 (1972). Here, because the Busins are precluded from maintaining their ejectment action against the Whitings, the Whitings prevail, making summary judgment in their favor proper.

Judgment affirmed.