J-A20019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KETA GAS & OIL COMPANY, A PENNSYLVANIA CORPORATION, FORMERLY KETA REALTY COMPANY | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| THOMAS E. PROCTOR, JAMES H. PROCTOR, THOMAS E. PROCTOR, JR., ANNE PROCTOR RICE, EMILY PROCTOR MANDELL, LYDIA W. THACHER, AUGUSTA PROCTOR, ELLEN O. PROCTOR, SARAH JOSLIN, ABEL H. PROCTOR AND MASSACHUSETTS GENERAL HOSPITAL, HEIRS LEGATEES AND DEVISEES UNDER THE WILL OF THOMAS E. PROCTOR, AND ALL PERSONS CLAIMING UNDER OR THROUGH THE ABOVE, AND BRINKER HUNTING CLUB, A NON-PROFIT CORPORATION | : : : : : : : : : : : : : : : : : : : : | No. 1939 MDA 2018 |
| v. | : : : : | |
| ANADARKO E&P ONSHORE, LLC, SOUTHWESTERN ENERGY PRODUCTION COMPANY, AND INTERNATIONAL DEVELOPMENT CORPORATION | : : : : : : : : | |
| APPEAL OF:  TROUT RUN HUNTING & FISHING CLUB, INC., SUCCESSOR IN INTEREST TO BRINKER HUNTING CLUB | : : : : | |

Appeal from the Order Entered October 23, 2018

In the Court of Common Pleas of Lycoming County Civil Division at
No(s): CV-1950-000571-QT

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED DECEMBER 06, 2019**

Appellant, Trout Run Hunting & Fishing Club, Inc. ("Trout Run") appeals the trial court's order denying its motion to strike a default judgment entered on March 14, 1951. We affirm.

While the factual and procedural history of this case is extensive, we instantly provide the following relevant summary as gleaned from the trial court's opinion and the certified record. In 1894, the Proctor family owned the surface and subsurface rights to vast amounts of unseated lands in Pennsylvania including the parcels identified as James Strawbridge Warrant 5665 ("W5665") and as James Strawbridge Warrant 5667 ("W5667"). Only W5665, consisting of approximately 948 acres, is at issue in this case.

In 1894, Thomas Proctor and his wife conveyed their surface rights in W5665 to Elk Tanning Company but reserved the subsurface rights for themselves. In 1903, Elk conveyed the surface rights to Central PA Lumber Company ("CPLC"). In 1908, Calvin H. McCauley, Jr. purchased both W5665 and W5667 at a tax sale, only to turn around and sell the properties back to CPLC in 1910. Thereafter, CPLC purported to hold both the surface and subsurface rights to W5665 due to the tax sale. In 1921, CPLC conveyed its surface interest in W5665 to Lincoln Hunting and Fishing club but also purported to reserve the subsurface rights to Proctor, even though Proctor's

- 2 -

rights were arguably divested by the tax sale (this deed is hereinafter referred to as "the Lincoln deed"). For purposes of the instant case, the specific language at issue in the Lincoln deed is as follows:

> EXCEPTING and RESERVING, Nevertheless, unto Thomas E. Proctor his heirs and assigns, all the natural gas, coal, coal oil, Petroleum, marble and all minerals of every kind and character in upon or under the said lands hereinbefore mentioned and described and every part thereof or which may at any time hereinafter be discovered … The above-mentioned minerals and mineral rights to be excepted and reserved as full as said minerals and mineral rights were excepted and reserved in deed from Thomas E. Proctor and wife above recited.

In 1942, CPLC conveyed the subsurface rights to W5665, along with other parcels, by quitclaim deed, to Keystone Tanning & Glue Company, who in 1950 conveyed the same rights to Keta Realty Company ("Keta"). Lincoln conveyed its surface rights to W5665 to Brinker Hunting Club in 1948.

In 1950, Keta filed a complaint to quiet title to the subsurface rights to W5665 and W5667. In the 1950 complaint, Keta recited the chain of title to both W5665 and W5667, complete with references to the relevant deeds. Proctor and Brinker were among the named defendants to the complaint. The sheriff properly served Brinker with the complaint, but Proctor was served via publication because Keta claimed to be unable to identify or locate the Proctor heirs. In any event, neither Proctor nor Brinker responded and in March 1951, the court entered a default judgment ("1951 Default Judgment") declaring, *inter alia*, Keta the owner of all subsurface rights to W5665 and W5667. Successors in interest to Keta include Southwestern Energy Production

Company ("SWN") and International Development Corporation ("IDC"), both

Appellees in the instant case. Trout Run is the successor in interest to Brinker.

After the 1951 Default Judgment, the next judicial activity in this case

occurred in 2014 and 2015, when Proctor's various heirs filed petitions to

strike/open the 1951 Default Judgment. The trial court denied Proctor's

petition to strike, finding that Keta's 1950 complaint to quiet title was not

deficient in regard to its description of the land and chain of title and that a

defect did not appear on the face of the record. However, the trial court did

issue an order to open the 1951 Default Judgment in 2015, finding that Keta

had engaged in fraud in 1950 in order to obtain the judgment by claiming to

be unaware of the Proctor heirs' whereabouts. In essence, the court credited

the allegation that Keta engaged in unsuccessful negotiations with Proctor to

extinguish Proctor's reserved subsurface rights and thereafter filed the quiet

title complaint regarding the same rights.

In 2018, Trout Run filed a separate motion to strike the 1951 Default

Judgment. After hearing argument on the matter, the trial court dismissed

Trout Run's motion in an October 23, 2018 order and memorandum opinion.[1]

_____

[1] We note that after the trial court opened the 1951 Default Judgment in 2015, IDC, SWN, and Anadarko LLC (another successor in interest to Keta) filed motions for summary judgment averring that the 1951 Default Judgment should remain in place, while Proctor filed a response, raising a New Matter, seeking to reverse the 1951 Default Judgment. The trial court, via the October 23, 2018 order here at issue, also disposed of all of the above referenced motions by ultimately granting summary judgment in favor of Keta's successors in interest, thereby affirming the 1951 Default Judgment. Proctor

Trout Run filed the instant timely appeal and raised the following issues for our review:

1) Whether the trial court erred as a matter of law, in dismissing Trout Run's petition as moot, where no intervening circumstances or events eliminated the controversy arising under Keta's Complaint to Quiet Title?

2) Whether the trial court erred as a matter of law in applying the coordinate jurisdiction rule to bar relief for Trout Run based on another judge's ruling on other parties' petitions to strike that raised different issues, especially when Trout Run had no notice of any proceeding on those petitions and had no opportunity to present argument?

3) Whether the trial court erred as a matter of law by failing to strike the default judgment where, applying established standards of deed interpretation, the only possible interpretation of the Lincoln Deed results in CPLC's conveyance of the subsurface rights in Warrant 5665 to Lincoln Hunting Club?

Trout Run's Br. at 4.

Because we deem Trout Run's third issue to be dispositive, we begin by addressing that claim. Trout Run argues the trial court erred by declining to strike the 1951 Default Judgment. Specifically, Trout Run claims that the plain language of the Lincoln Deed reserved the subsurface rights to W5665 to Proctor, not CPLC. Therefore, Trout Run maintains that because Proctor's subsurface rights had been extinguished by a tax sale in 1908, well before CPLC transferred its ownership to W5665 via the Lincoln Deed, CPLC legally

_____

has also filed an appeal from the trial court's October 23, 2018 order, which is currently before this Court, listed under 1975 MDA 2018.

transferred fee simple title to W5665 to the grantee of the Lincoln Deed, the Lincoln Hunting Club, a predecessor in interest to Brinker and ultimately, Trout Run.

In support of its contention, Trout Run points to 21 P.S. §§ 2-3 for the proposition that absent a valid reservation of rights on the face of a deed, all of the grantor's rights in the subject property are conveyed via that deed.[2] Accordingly, Trout Run avers that Keta's 1950 complaint to quiet title was insufficient to establish a cause of action because CPLC, Keta's predecessor in interest, did not reserve any subsurface rights in the Lincoln Deed and therefore had no rights to sell to Keta. Instead, according to Trout Run, Keta never had any subsurface rights to W5665 at any time because such rights had been previously transferred in 1921, via the Lincoln Deed, to the Lincoln Hunting Club, by operation of law, as the plain terms of that deed only made a reservation to Proctor, which was ineffective due to the 1908 tax sale. Therefore, Trout Run posits that Keta's 1951 complaint to quiet title was fatally deficient on its face. We disagree.

"A petition to strike a judgment and a petition to open a judgment are separate and distinct remedies." **U.S. Bank Nat'l Ass'n for Pa. Hous. Fin. Agency v. Watters**, 163 A.3d 1019, 1027 (Pa.Super. 2017). "A petition to

---

[2] 21 P.S. § 2 provides, "the words 'grant and convey,' or either one of said words, shall be effective to pass to the grantee . . . fee simple title." 21 P.S. § 3 states, "All deeds . . . unless an exception or reservation be made therein, shall be construed to include all the estate, right, title . . . of the grantor . . . ."

open a judgment seeks to re-open a case following a default judgment in order to assert a meritorious defense; a motion to strike a judgment 'is the remedy sought by one who complains of fatal irregularities appearing on the face of the record.'" *Id.* at 1027-28 (quoting *Cameron v. Great Atl. & Pac. Tea Co.*, 26 A.2d 715, 717 (Pa. 1970)).

When reviewing a petition to strike, this court employs a *de novo* standard of review. *Id.* at 1028 n.9. Further, a petition to strike is not a matter that involves a trial court's discretion and "is not a chance to review the merits of the allegations of a complaint." *Oswald v. WB Pub. Square Assocs., LLC*, 80 A.3d 790, 794 (Pa.Super. 2013). Indeed, a petition to strike may only be granted when there is a fatal defect on the face of the record. *Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 919 (Pa. 1997). "When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a judgment, a court may only look at what was in the record when the judgment was entered." *Id.* at 917.

In addition, where the factual allegations, liberally construed, support the cause of action, the judgment that the movant seeks to strike should not be considered irregular on its face. *Maiorana v. Farmers & Merchants Bank*, 466 A.2d 188, 191 (Pa.Super. 1983). To prevail on a quiet title claim, a claimant must demonstrate title by a fair preponderance of the evidence. *Hallman v. Turns*, 482 A.2d 1284, 1287-88 (Pa.Super. 1984). To this end, *prima facie* proof of title is sufficient until an adverse party presents superior title. *Id.* at 1287.

In this case, Trout Run baldly sets forth the argument that the trial court erred by failing to strike the 1951 Default Judgment due to its contention that Keta's quiet title complaint "failed to state a cause of action." Trout Run's Br. at 14. However, we conclude that Trout Run's averment constitutes a thinly veiled attempt to argue the merits of Keta's 1950 complaint to quiet title and not a challenge to any fatal defect on the face of the record and therefore Keta's appeal must fail. **See Oswald**, 80 A.3d at 794.

In its 1950 complaint to quiet title, Keta set forth a *prima facie* claim for title, complete with a description of the chain of title, which was sufficient to present a cause of action in a quiet title proceeding. **See Hallman**, 482 A.2d at 1287-88; **Maiorana**, 466 A.2d at 191.  Thus, Trout Run's contention that the 1951 Default Judgment was facially defective due to Keta's failure to state a claim lacks merit.

Moreover, we note that Trout Run fails to provide evidence of any other irregularity that would constitute a defect of the face of the record, as required to strike a judgment. **See U.S. Bank Nat'l Ass'n**, 163 A.3d at 1027; **Cintas Corp.,** 700 A.2d at 919. Trout Run does not dispute that its predecessor in interest, Brinker, had proper notice of the 1951 Default Judgment and does not explain why it should not be bound by Brinker's failure to object at the relevant time. Further, Trout Run does not address why it waited more than 65 years from the 1951 Default Judgment to take any action, during which time it is beyond cavil that multiple parties relied on that judgment, including the instant Appellees.

Accordingly, we conclude that the trial court did not err by denying Trout Run's petition to strike the 1951 Default Judgment because Trout Run failed to present evidence of a fatal defect of the face of the record. Therefore, we need not address Trout Run's alternative arguments set forth in its first two issues on appeal.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/06/2019